FRANK P. BUTLER, Appellee, v. THOMAS L. CURRAN, Secretary
of Agriculture, Appellant.

No. 44179.

APRIL 5, 1938.

John H. Mitchell, Attorney General, N. S. Genung, Spec.
Asst. Attorney General, and Charles W. Wilson, Asst. Attorney
General, for appellants.

Edward L. O'Connor, for appellee.

MILLER, J.—Appellee is an honorably discharged soldier of
the United States, having served in the War with Germany. On
or about February 1, 1933, he was appointed as inspector in the
Dairy and Food Division of the Department of Agriculture of
the State of Iowa, by the then Secretary of Agriculture, Ray

Murray, and continued as such inspector until the latter part of February, 1937. On February 23, 1937, appellant, the present Secretary of Agriculture, caused a letter of dismissal to be sent to appellee, therein asking him to resign his position as of February 27, 1937, to which letter appellee, on March 1, 1937, sent a reply to the effect that he failed to see why he should resign in view of the Soldiers Preference Law, Code 1935, section 1159 et seq., and requested reasons for his apparent dismissal. Two days following the transmittal of that letter appellee filed his petition for a writ of certiorari in the office of the clerk of the district court of Polk County, Iowa, therein alleging his status as an honorably discharged soldier of the United States Government, his occupancy of the appointive office as inspector since February, 1933, his dismissal from said office by appellant; and therein he alleged that no charges had been preferred against him, that he had not been granted any hearing as provided for in section 1163 of the Code of Iowa, that the action of appellant in attempting to dismiss him was arbitrary, unlawful, and void, and constituted a direct violation of the provisions of said section. Therein appellee asked that a writ of certiorari issue directing appellant to certify a transcript of the record and proceedings with reference to his dismissal, that said dismissal be annulled and set aside, and that he be reinstated in said position.

In compliance with said petition a writ of certiorari was issued directed to appellant herein, and on March 18, 1937, appellant filed his return thereto, therein stating that no proceedings were had with respect to the termination of the services and employment of appellee as inspector, but that John A. Feeney, Chief of the Dairy and Food Department of Agriculture, at the instance and request of the appellant, caused a letter to be directed to appellee on February 23, 1937, requesting his resignation on or before February 27, 1937; that a new dairy and food inspector had been appointed by appellant who assumed the duties of said position on March 1, 1937; that the Secretary of Agriculture is the head of the Department of Agriculture; that the term of office of said secretary is for two years, and is an elective office; that appellee was appointed by Ray Murray, the secretary preceding appellant; that appellee's employment did not extend for a longer period of time than that of the officer appointing him, and that his term of em-

ployment expired with that of his appointing officer; that the duties pertaining to the position of inspector in the Food and Dairy Division are of a strictly confidential nature, and by reason thereof appellee does not come within the provisions of the Soldiers Preference Law; that the action of appellant in discharging appellee was not without cause or excuse, in that appellee was discharged for incompetency and misconduct, in that appellee in the performance of his duties made collection of license fees, which he failed to remit or account for; and that he was negligent, dilatory, and careless in making his remittance reports. Simultaneously with the filing of said return, appellant filed his answer, therein in substance pleading the same facts as set forth in his return.

To this answer and return appellee filed his reply therein specifically denying that his position as inspector, or his duties in connection therewith, constituted a confidential relationship to appellant, or that his official acts as inspector involved secrecy, trust, and confidence, which were personal to the appellant. Therein appellee specifically denied that he was guilty of any misconduct or incompetency in the discharge of his duties, as alleged by appellant, and in addition thereto alleged that such claimed misconduct or incompetency were matters of a trivial and inconsequential nature relative to the details of administration, which had all been corrected prior to the time appellant became Secretary of Agriculture; that all claims of that nature were disposed of to the satisfaction of the Department of Agriculture before appellant had any connection therewith; that said claims were too remote to constitute any justification for the discharge of appellee; and that in truth and in fact said claims constituted an afterthought, as a capricious and whimsical excuse for the discharge of appellee. Therein appellee also alleged that his tenure of office as such inspector did not terminate with that of the office of the former secretary, and that said office was indeterminate and continuous, and being so, appellee could not be dismissed except for incompetency or misconduct shown after a hearing upon due notice and upon stated charges as provided in section 1163 of the Code of Iowa. Following trial upon the issues raised in said pleadings, the trial court sustained the writ of certiorari therein reinstating appellee in the position of inspector in the Dairy and Food Division, and finding appellee entitled to the salary of said office

from the date of his discharge, from which ruling appellant appeals.

The Soldiers Preference Law of the State of Iowa is contained in chapter 60 of the Code, wherein section 1163 provides as follows:

"No person holding a public position by appointment or employment, and belonging to any of the classes of persons to whom a preference is herein granted, shall be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, and with the right of such employee or appointee to a review by a writ of certiorari."

██ It is conceded that prior to the dismissal of appellee no charges were filed against him, and that no hearing was held upon notice as provided in section 1163. However, in that connection it is to be observed that appellant not only in his return, but likewise in his answer, plead that appellee had committed acts as such inspector constituting misconduct, and that he was likewise incompetent; to which pleadings appellee filed a reply, therein specifically denying such allegations, and likewise pleading matters in excuse or mitigation thereof. It is to be observed therefrom that the parties herein joined issue upon such alleged misconduct and incompetency, and, in fact, practically the entire evidence heard before the trial court was devoted thereto. The appellee having joined issue upon said question of misconduct and incompetency, and having submitted the same to the district court for determination, is therefore held to have waived the provisions of section 1163 requiring a hearing upon due notice upon stated charges.

In the case of Allen v. Wegman, 218 Iowa 801, 807, 254 N. W. 74, 78, the plaintiff was discharged without hearing, and there, as in the instant case, issue was joined upon the question of misconduct, and the same submitted to the trial court for determination, and in commenting thereon Mr. Justice Anderson, in speaking for the Court, used the following language:

"It is true that no hearing was had before Mr. Allen's dismissal upon the charges of incompetency and misconduct made against him, but both parties joined issue upon this question and submitted it to the trial court for its determination, and after

a full hearing the trial court determined the issue in favor of the plaintiff, as we have indicated. The parties thus have consented to a submission and determination of the question by the trial court, and we are treating the question on this appeal as one for our determination.''

As a result thereof, we are at the outset confronted with the necessity of reviewing the testimony in connection with such alleged misconduct and incompetency, to ascertain whether or not the finding of the trial court in connection therewith was erroneous.

The duties of appellee as inspector in the Food and Dairy Division were many and varied, and consisted of sanitary inspection of grocery stores, restaurants, hotels, dairies, cream stations, creameries, also the collection of license fees for the issuance of various licenses such as egg, poultry, milk, sanitary cold storage, cream grading, gasoline measuring pumps, and rendering plant trucks. In fact, in the performance of his duties as such inspector he was concerned with the enforcement of some forty-seven laws. Appellee's territory covered the counties of Iowa, Muscatine, Washington, and Johnson, in which counties as such inspector he conducted all inspections of the businesses above specified, and likewise made collection of the various license fees as above outlined. It was the duty of the inspector, in collecting such license fees, to procure from each applicant an application for a license, together with the required fee therefor, and at the time of the collection thereof to issue to each applicant the inspector's receipt for the amount of money so collected. It was then the duty of the inspector to transmit to the department said applications and remittances, at least once a week, together with a remittance report.

Such remittance reports were supplied the inspectors, wherein were printed the various subheads for which license fees were to be collected, such as ''gas pump'', ''egg'', ''poultry'', etc., following which blank lines were provided for entering the names and addresses of applicants for licenses, together with the amount collected from each applicant. Upon receipt of such remittance reports, it was the duty of the chief clerk in the department to check the remittance reports with the applications and remittances accompanying same, make notation of the inspector who sent the remittances and the amounts thereof,

and then enter the applications by number in his fee book. The applications and remittances were then separated, the applications being sent to the license clerk for issuance of licenses in accordance therewith, and the remittances being placed in the cash box. In some instances inspectors failed to comply with the course of procedure as above outlined, but mailed the applications with the fees therefor to the department without the remittance report. However, in those instances the procedure of the chief clerk was the same; that is, he made notations of the amount of the remittances received and from what particular inspector, entered the application in his fee book, following which the applications were passed to the license clerk for the issuance of licenses. At the end of each month a report was made, therein compiling the amounts received from each inspector during that month, which report would therefore show every remittance made by each inspector and the date thereof. It was established from the evidence that in some exceptional cases applications were received from inspectors without accompanying remittances, but in those instances licenses were not issued, and the applications were returned to the inspector with the request that remittances be forwarded therefor. Likewise, in a few exceptional instances remittances were received without applications, or other information in connection therewith, in which case the remittances were placed in the cash box, and an investigation made to determine from what source these remittances were received.

It was established from the evidence without dispute that on June 8, 1936, appellee collected $6 from one W. Greathouse of Oxford, as license fees for two gasoline measuring pumps; that he gave Greathouse his official receipt therefor, and that in his weekly remittance report on the Saturday following, or June 13, said item of $6 was not included; that on August 21, 1936, he collected $6 from one E. Dodt of Tiffin, for gasoline pump license fees, issued his official receipt therefor to said Dodt, and in his weekly remittance report on the following Saturday, Aug. 22, said item of $6 was not included; that on September 17, 1936, he collected $6 from one R. O. Kroger of Wilton Junction, for gasoline pump license fees, issued his official receipt therefor to said Kroger, and in his weekly remittance report on the following Saturday, September 19th, said item of $6 was not included; that on October 20, 1936, he collected $9

from one F. W. Passmore of Durant for gasoline pump license fees, issued his official receipt therefor to said Passmore, and in his weekly remittance report on the following Saturday, October 24, said item of $9 was not included; and that on January 11, 1937, he collected $25 from one Jay Daines of Marengo, as license fees to operate a rendering plant truck, issued his official receipt therefor to said Daines, and in his weekly remittance report on the following Saturday, January 16, said item of $25 was not included.

The monthly reports prepared by the chief clerk, covering the months involved in the five transactions above referred to, were introduced in evidence, and, likewise, all of the remittance reports of appellee covering the months involved in said five matters were introduced in evidence. A comparison of such monthly reports of the chief clerk and the remittance reports prepared and furnished by appellee show the credits to appellee for remittances on the monthly reports to correspond identically with the various remittance reports furnished by him, with the exception of one item of $8 shown to have been received by the department on September 30th; neither of which amount or date are involved herein. As a result thereof the various remittance reports furnished by appellee on the Saturdays following the collection of each of the five items above referred to, which remittance reports did not mention said items, correspond exactly with the remittance credits to appellee, as shown by the monthly reports. The evidence also established, without dispute, that none of the five applicants above named have ever received a license from the department for the fees paid by them. In addition thereto, the license records for the department were investigated and checked, and at no place was there any record of any license having been issued to any of said five applicants in conformity with the fees paid by each of them to appellee, and likewise no applications were found in the department corresponding to the receipts issued by appellee to said five applicants. From the foregoing it is to be observed that in all of the five instances set out the same situation exists. Appellee did not include any of these five collections in his remittance reports; likewise, none of them are recorded in the monthly reports prepared by the chief clerk; likewise, no licenses were ever issued; and, likewise, there are no applications on file in the department corresponding to any of the receipts.

As to each of these five collections, appellee testified that he mailed each of said remittances, together with the applications, direct to the department, but did not include therewith any remittance reports, and likewise testified that in each of these instances the remittances were not sent by check, money order or draft, but that he enclosed the actual currency, together with the applications, to the department at Des Moines. In connection with this claim of appellee it is to be recalled that the collection from E. Dodt of Tiffin, Iowa, was made on August 21, 1936, and that on the following day he made his weekly remittance report. According to his testimony he mailed this remittance in currency upon the day he received the same, and yet in his weekly remittance report the following day he shows the collection of gasoline pump license fees from three other applicants residing in the town of Tiffin. It is likewise to be recalled that the collection from F. W. Passmore of Durant was made on October 20, 1936, and appellee made his weekly remittance report covering that week on October 24, 1936. According to his testimony he mailed the collection from Passmore upon the day he received the same, and yet, in his weekly remittance report covering that week he shows the collection of gasoline pump license fees from four other applicants residing in the town of Durant. He does not endeavor to make any explanation as to why these two individual items were transmitted by him in currency, at once, when at the same time he made other collections from the same towns, which were retained by him until his weekly remittances. In connection with the collection made from Jay Daines of Marengo, Iowa, of $25 on January 11, 1937, the wife of Mr. Daines telephoned appellee about two weeks thereafter and informed him that her husband had not as yet received his license, and in said conversation appellee informed her to tell her husband to keep the receipt with him, and that the license would be out in a few days. This telephone conversation was two weeks after the collection of the money from Daines, and following same appellee did not take the matter up with the department, or make any inquiries whatever in reference to the license, or as to the reasons why same had not been issued. Appellee admits that he kept no duplicate record of any of these remittances, and he also testified that the various items of currency were enclosed in the United States mail, unregistered, and that he did not even recall whether the envelopes

containing said remittances had returns thereon. The record establishes that during the time he was in the employ of the department he made in the neighborhood of 6,200 inspections, and it is surprising, in view of that amount of business, that it was possible for appellee to recall distinctly every detail in connection with these five matters,—the receipt of the money, and the immediate transmittal of the actual currency itself with the application without the usual remittance report. Especially is this surprising when we consider that each of said matters were separated as to time, and that other collections made from the same towns were not so remitted, but were retained by appellee and remitted with his regular weekly remittance report. It is likewise a peculiar circumstance that in each of those instances the United States mails should have failed to function. The conduct of appellee in not contacting the department in reference to the Daines license, following his notification by Mrs. Daines that same had not been received, was certainly inconsistent with his claim of remittance of this $25 in currency two weeks prior thereto.

■■■ A review of the entire record in connection with these five matters satisfied us that the evidence was sufficient to establish misconduct upon the part of appellee, and we feel that this evidence, viewed in its entirety, establishes that appellee did make collection of license fees which he failed to transmit to the department, and that appellant has successfully sustained the burden of establishing misconduct and incompetency as required by section 1164 of the Code.

It is to be recalled that in appellee's reply, in addition to denying the charges of misconduct, he pleaded and claimed that these matters were "trivial and inconsequential", that they had been "disposed of to the satisfaction of the preceding head of the Department of Agriculture", and that they were "too remote to constitute justification". We are not familiar with any rule of law to the effect that the collection of moneys due and owing the State of Iowa by a representative thereof, and the retention thereof and failure to account therefor, is "trivial and inconsequential". In our opinion such action upon the part of any individual is wholly unjustified, unwarranted, and certainly is ample cause for dismissal.

In view of the conclusion we have reached upon the question of misconduct and incompetency, we find it unnecessary to

1348

consider any of the other questions urged herein. And it follows that the decree of the district court must be, and is hereby, reversed and remanded, with instructions to enter decree therein annulling the writ of certiorari.—Reversed and remanded.

STIGER, C. J., and ANDERSON, RICHARDS, HAMILTON, SAGER, and DONEGAN, JJ., concur.