Lorenz A. Horn, Administrator, Appellant, v.
Otto Anderson, Appellee.

No. 46429.

April 4, 1944.

Rehearing Denied June 9, 1944.

F. J. Lund, of Webster City, for appellant.

G. R. Hill, of Clarion, for appellee.

Miller, J.—This case was tried upon a demurrer to the petition. Accordingly, the facts must be taken to be those pleaded by the petition, filed December 24, 1942, as amended in January 1943, and are as follows: On April 17, 1920, defendant executed and delivered to Tillie Solmonson a promissory note for $2,000, due April 17, 1923, bearing interest at six per cent, with provision for attorney's fees in case of suit thereon. Endorsements on the back of the note show the payment of interest in full annually to April 17, 1929, and thereafter five payments of $25 and one payment of $10, the last payment being $25 paid May 7, 1937. Tillie Solmonson died intestate August 24, 1941, leaving her daughter, Luella Haug, as her only heir. Plaintiff is the administrator of the estate and contends that defendant acknowledged said debt and note unpaid, in writing, by certain letters signed by defendant, identified as Exhibits C, D, E, and F, in which letters Tillie Solmonson is referred to as "Aunt Tillie" and Luella Haug is referred to as "Luella." The petition demanded judgment for $3,720, with interest and costs including attorney's fees.

Exhibit B, attached to the petition, is a letter dated January 14, 1942, from Frank Nangle of Paw Paw, Illinois, to defendant, advising him that the note in suit had been placed in his hands for collection and asking for a payment thereon. Exhibit C is a letter from defendant to Nangle, dated January 18, 1942, apparently replying to Exhibit B, and states:

"In reply will say—during the depression we lost everything—farm, personal property and all. Then a few years ago mother—Mrs. Isabelle Anderson—was back there and talked the matter over with Mrs. Solmonson then gave to understand that Mrs. Solmonson just considered the money lost as the note was then due and outlawed.

"Here at the time I lost everything, to avoid taking bankruptcy I paid the creditors $100.00 on every $1,000.00 due. And if Mrs. Haug would consider settlement on that basis we might consider it in order to get the matter cleared up."

Exhibit D is dated the same day as Exhibit C, is written to Luella Haug, and confirms the statements made in Exhibit C. Exhibit E is a letter from defendant to Nangle, dated April

10, 1942, refers to Exhibit C and reiterates the position there taken.

Èxhibit F is a letter from defendant to Nangle and states, in part:

"You say it is not fair for us to hold her money. I am not holding her money. The only thing I can do is to treat her as I did my other creditors which is the honest and fair way to do. If I should try to beat anybody it would not be Luella. As a matter of fact I was not the one who borrowed that money of Aunt Tillie's. Mother was back there visiting * * * she [Tillie] asked Mother if she could use $2000. Mother told her she would have to see me about it. So Mother came home and asked me if we needed and I told her 'no.' But in a few days we got a draft for $2000 saying to use the money and make out a note at 6%. The only reason that note was not put in for collection—Mother and Aunt Tillie both knew that the money was lost during the depression. * * * what I should like to know—why should I be the goat on this note, which is past 20 years old? And I am informed that your Illinois laws treat any note after 10 years without renewing as null and void. I believe I paid the interest on the note for about 10 or 14 years. * * * Now this is final, as I know where I am at. You figure up all the interest I have paid on the note and the $200 I will pay soon and see what is left of the principal $2000. I do not want to get into a jam like during the last war and depression when I lost $45000 hard earned money and it is rather hard to take. I'd sure like to get 10% of my principal back. * * * I don't figure on paying more than the original $2000 in all. Talk the matter over with Luella and let us know soon what she will do. But this is all I will do."

In January 1943, defendant filed a demurrer to the petition as amended. Paragraphs 1 and 2 asserted the statute of limitations as a defense to the action. Paragraph 3 stated:

"3. That the debt being barred by the Statute of Limitations the letters attached to the plaintiff's petition are insufficient to revive the alleged debt as required by Section 11018 of the 1939 Code of Iowa, in that (a). The said writings or letters do not identify the debt in question. (b). The said letters do

não acknowledge the said debt as a valid and existing indebtedness. (c). The said letters do not acknowledge or admit that the debt sued upon is unpaid. (d). That the said letters, in fact, deny the validity of the debt and protest payment thereof. (e). That there is no unqualified acknowledgment or admission of the debt or that the same is unpaid. (f). The letters contain no promise either express or implied to pay the said debt at any time."

The demurrer was submitted to the court April 19, 1943. The ruling thereon was not entered until September 1, 1943. The court determined that the statutes, in effect when the demurrer was submitted, should be applied and, if not, that the demurrer should be treated as a motion to dismiss under Rule 111 of the Rules of Civil Procedure. The court found that "all of the letters which are attached to the plaintiff's petition and amendment thereto should be considered as a whole and when so considered I reach the conclusion that the defendant did not in any of the correspondence admit the note in question to be a valid and existing debt but on the contrary denied the validity of the debt and refused payment thereof. The defendant specifically raised the question of the Statutes of Limitation and asserted his rights thereunder. The writing relied upon by the plaintiff is insufficient as an admission to revive the debt which was long barred by the Statutes of Limitation." The court sustained paragraphs 1, 2, 3-b, 3-d, 3-e, 3-f of the demurrer and overruled paragraphs 3-a and 3-c. Plaintiff elected to stand on his petition. Judgment was entered dismissing the action at plaintiff's costs. Plaintiff appeals to this court.

Since the note herein was due by its terms April 17, 1923, it became barred by the statute of limitations (section 11007 (6), Code, 1931) ten years thereafter, or on April 18, 1933. Payments of interest and partial payments on principal or interest thereafter would not revive the debt. Hootman v. Beatty, 228 Iowa 591, 293 N. W. 32, and cases cited therein. The decisive question is whether defendant's letters are such an acknowledgment of the debt as to revive it under section 11018, Code, 1939, which provides as follows:

"Causes of action founded on contract are revived by an

admission in writing, signed by the party to be charged, that the debt is unpaid, or by a like new promise to pay the same."

■ · The statute provides for two methods of revivor (1) an admission in writing, signed by the party to be charged, that the debt is unpaid, or (2) a like new promise to pay the same. It is not necessary that the writing constitute both an admission and a new promise. Either one is sufficient. McClure v. Smeltzer, 222 Iowa 732, 734, 269 N. W. 888, and cases cited therein. The letters relied upon contain no promise to pay the note in full, merely an offer to pay ten per cent of the face of same. The plaintiff does not rely upon a new promise to pay the note but contends that the letters constitute a sufficient admission in writing that the debt is unpaid.

The trial court, in overruling paragraph 3-a of the demurrer, in effect held that the letters sufficiently identify the debt. Defendant concedes that such holding is correct. We agree that it is right. Barton v. Boland, 224 Iowa 1215, 279 N. W. 87, and cases cited therein.

In overruling paragraph 3-c of the demurrer the court appears to hold that the letters acknowledge or admit that the debt is unpaid. At first blush, this might seem to be decisive of the case, because the statute merely required that there be "an admission in writing, signed by the party to be charged, that the debt is unpaid." However, taken with the rulings on the balance of paragraph 3 of the demurrer, that is not the effect of the ruling. The subparagraphs that the court sustained assert that the letters do not acknowledge the debt as a valid and existing indebtedness, deny the validity of the debt, protest payment thereof, make no unqualified acknowledgment or admission of the debt or that the same is unpaid, and contain no promise to pay the debt at any time. The court held that these features of the writings prevented them from constituting such an admission that the debt is unpaid as would revive the debt. The court was right in so holding.

The provisions of the statute, section 11018, Code, 1939, have existed without substantial change for more than eighty years. See section 2751, Revision of 1860; section 2539, Code, 1873; section 3456, Code, 1897. Prior to 1860, however, the statute did not require the admission or new promise to be in

writing, signed by the party to be charged. Section 1670, Code, 1851.

In Penley v. Waterhouse, 3 (Clarke) Iowa 418, 438, decided in 1856, Chief Justice Wright points out that that statute (section 1670, Code, 1851) was declaratory of the common law. The English statutes and decisions are reviewed, and this court announces as follows:

"Hence it may be now said to be well settled, that in order to take a case out of the statute, there must either be an *express promise*, or the acknowledgment of a *subsisting debt,* from which a promise of payment may be inferred."

In Kleis v. McGrath, 127 Iowa 459, 462, 103 N. W. 371, 69 L. R. A. 260, 109 Am. St. Rep. 396, the pronouncement above quoted is followed. However, in Doran v. Doran, 145 Iowa 122, 126, 123 N. W. 996, 997, 25 L. R. A., N. S., 805, Judge McClain points out that the change made in section 2751, Revision of 1860, and retained in section 2539, Code, 1873, and section 3456, Code, 1897, that the admission or new promise must be in writing signed by the party to be charged thereby, is "a statute differing in terms and evidently in purpose from those statutes" construed in the early cases. We therefore held therein that the admission in writing need not be made to the creditor or one representing him but would be sufficient though made to a stranger, stating at page 128 of 145 Iowa, page 998 of 123 N. W., as follows:

"The conclusion that our statute should be considered simply as providing a form of evidence removing the bar of the statute of limitations rather than as requiring something equivalent to a new promise to pay is sustained in principle by a number of cases in which it is held that the admission or acknowledgment is effectual if established by proper evidence, although made to an entire stranger to the contract sought to be enforced." (Citing cases.)

The foregoing pronouncement was recently adhered to in Leland v. Johnson, 227 Iowa 520, 288 N. W. 595. We have also held that a written admission that the debt is unpaid, which will revive the debt, is contained in an offer to settle a legal

liability for less than the full amount of the debt, if "the offers to compromise contained therein were not merely offers to pay something to avoid litigation, but were offers to make settlement of an indebtedness which these letters showed was still unpaid." Koht v. Dean, 220 Iowa 86, 93, 261 N. W. 491, 495. See, also, McClure v. Smeltzer, supra, 222 Iowa 732, 739, 269 N. W. 888.

■ But here we have a debt that is barred by the statute. Defendant's letters recite that fact, state that he relies thereon, and make an offer to pay but ten per cent of the face of the note to buy his peace. His statement in the first letter that the note is "outlawed," and his later statements, "Why should I be the goat on this note, which is past 20 years old?"—"your Illinois laws treat any note after 10 years without renewing as null and void,"—"this is final, as I know where I am at,"— "this is all I will do," clearly show that he did not intend to do more than that. These statements are easily distinguishable from those considered in Koht v. Dean, supra, and McClure v. Smeltzer, supra, where the writings were not coupled with the claim that the statutory bar was a defense, such as we have here. Surely, these statements cannot constitute an "admission" that will revive an outlawed debt under section 11018 of the Code. If that were so, the statute would become a dangerous trap and susceptible to grave abuse. Cannot one reply to a collection letter and state that, though the debt is unpaid, it is barred by the statute and unenforceable? Would such a letter revive the debt? We hold that it would not. An admission, which the writer qualifies in the next breath by the assertion of the defense of the statute, is not the kind of an "admission" contemplated by the legislature in section 11018.

We are satisfied that the ruling complained of was not erroneous. The judgment is—Affirmed.

HALE, MULRONEY, OLIVER, MANTZ, GARFIELD, and WENNERSTRUM, JJ., concur.

OLIVER, GARFIELD, MANTZ, and MULRONEY, JJ., also specially concur.

SMITH, C. J., and BLISS, J., dissent.

OLIVER, J. (specially concurring)—Although I concur generally in the majority opinion, I desire to comment upon the dissenting opinion. The dissent points out that the Iowa statute requires only an admission that the debt is unpaid. But to constitute an admission that the debt is unpaid the writing must necessarily refer to an existing liability. In the language of Penley v. Waterhouse, 3 (Clarke) Iowa 418, 440:

"An acknowledgment of the original justice of the claim, is not sufficient, unless accompanied with an admission of the party's present liability."

All authorities agree that a statement that a debt at one time existed, coupled with a denial of present liability, is not an admission of a debt. The statute of limitations is a valid legal defense, and when the writing evidences an intention to rely upon that defense it does not constitute an admission that there is a subsisting enforceable obligation or a present legal liability.

A few other states have statutes governing revivors similar to those of Iowa. The courts of two of these have decided cases involving the proposition here in controversy. Both reached the same result as the majority opinion in this case.

The statute involved in Golden Rule Oil Co. v. Liebst, 153 Kan. 123, 124, 125, 109 P. 2d 95, 96, 97, required only the acknowledgment of an existing liability, debt, or claim. In that case defendant wrote a letter referring to a promissory note and stating that if plaintiff would give him a job a certain part of his wages could be deducted and applied upon it. His second letter stated:

" 'If I can ever get the money I will pay it though it is outlawed.' "

The court said the text of the letters "does not reveal a distinct and unequivocal acknowledgment of the 'outlawed' note as a present existing liability," and was merely a conditional offer. With reference to the second letter, the decision states:

"The most explicit sentence in this letter was 'If I can ever get the money I will pay it though it is outlawed.' Cer-

tainly defendant's words 'though it is outlawed' cannot be said to. acknowledge the note as a present existing liability."

In Nelson v. Becker, 32 Neb. 99, 101, 103, 48 N. W. 962, 963, defendant wrote:

" 'In 1877 you, as attorney for Willis Nelson, wrongfully procured judgment against me for $2,000. Your judgment is long since outlawed in this country, and was it not you could not collect from me. * * * if you will cause the judgment to be discharged from record in Buffalo, I will pay you ($40) forty dollars.' "

The court said:

"In the first letter the defendant speaks of it as the 'wrongfully procured judgment,' and insists that it is barred in Nebraska by the statute of limitations. * * * The defendant was liable in New York, as the judgment was not barred there. The letters were nothing more than propositions to give $40 to buy his peace. The fair and reasonable construction of the language used, indicates that it was not the intention of Becker to unqualifiedly acknowledge that he was bound for the satisfaction of the judgment. To remove the bar of the statute, the debtor must unqualifiedly acknowledge an existing liability."

I am satisfied the majority opinion is sound in principle. No decision to the contrary, under any statute, has been called to my attention.

GARFIELD, MANTZ, and MULRONEY, JJ., join in this special concurrence.

SMITH, C. J. (dissenting)—Because I believe the majority opinion adds to the statute something never said or intended by the legislature I am compelled to dissent. It is true that this statute has been practically unchanged for over eighty years. Even prior to the Revision of 1860 it was substantially the same as now except that the admission or new promise was not then required to be "in writing signed by the party to be charged."

Our court at first (prior to the Revision of 1860) held the

statute to be merely declaratory of the common law and that the "admission" contemplated must therefore be such as would imply a new promise to pay. Penley v. Waterhouse, 3 (Clarke) Iowa 418, 438. In that case Judge Wright said:

"If, however, the debt shall be acknowledged ever so clearly, and the debtor expresses an intention not to pay, there can be no recovery."

Presumably this was said to illustrate a case in which the debtor clearly negatived any implied promise to pay.

Difficulty with this construction of the original statute soon arose when the court was confronted by a situation in which the written admission (required by the Revision of 1860) was not made to the party to whom the debt was owing. Chief Justice Beck then (1873) said:

"The statute provides that an admission *or* new promise in writing will revive the cause of action * * *. Both are not required; the admission alone is sufficient. *It is not regarded as a contract, but is simply a written declaration that the debt is not paid. * * * The object of the law is to secure written evidence, attested by the signature of the debtor, that the debt is not paid.*" Mahon v. Cooley, 36 Iowa 479, 482. (Italics supplied.)

This language should have put at rest any idea of the necessity for an implied promise to pay. A year later it was again said:

"The admission is not to be regarded like a new promise or a contract, but *simply as evidence of the nonpayment of the debt.*" Ayres v. Bane, 39 Iowa 518, 519. (Italics supplied.)

. In Doran v. Doran, 145 Iowa 122, 125, 127, 123 N. W. 996, 997, 998, 25 L. R. A., N. S., 805, Justice McClain again made clear that our statute was not intended to be declaratory of the common-law doctrine that "an acknowledgment was recognized as reviving the indebtedness only so far as it constituted by implication a new promise * * *." On the contrary, he points out the use of the word "admission" in our statute instead of the word "acknowledgment" as used in the English cases, and concludes:

"In short, the term relates to a statement presumably against

the interest of the party making it and its admissibility is determined by the rules of evidence * * *.''

These pronouncements have stood unquestioned for all these years, except for some language of Justice Weaver in 1905. Kleis v. McGrath, 127 Iowa 459, 103 N. W. 371, 69 L. R. A. 260, 109 Am. St. Rep. 396. And three years later, in Senninger v. Rowley, 138 Iowa 617, 116 N. W. 695, 18 L. R. A., N. S., 223, he quite clearly dissociates the required admission from any agreement to pay or assume payment of the debt.

The decisions of Justices Beck and McClain above referred to follow the plain language of the statute. They clearly repudiate the doctrine of implied promise to pay. But the majority opinion here revives that doctrine by indirection. If the admission that the debt is unpaid need not *imply* a promise to pay, of what significance is the fact that it is coupled with an expression of an intention *not* to pay?

Because the admissions here are accompanied by language designed to *negative* any promise or intention to pay, it is said:

''Surely, these statements cannot constitute an 'admission' that will revive an outlawed debt under section 11018 of the Code. If that were so, the statute would become a dangerous trap and susceptible to grave abuse.''

No authority is cited for this direct qualification of the language of the statute. Nor is the reason given persuasive. Why would the statute be a ''dangerous trap''? And to what ''grave abuse'' could it become susceptible if applied according to its plain language? Is there any great moral purpose to be served in permitting a debtor to write: ''The debt is not paid but it is outlawed and I do not intend to pay it,'' and thus escape the consequences of his admission?

It has been said statutes of limitation are ''founded in part at least on the general experience of mankind that claims which are valid are not usually allowed to remain neglected, and that the lapse of years without any attempt to enforce a demand creates a presumption against its original validity or that it has ceased to exist * * *.'' 37 C. J. 684, section 2; 34 Am. Jur. 18, section 9.

That. statutory presumption seems to have been in the legislative mind when this "revivor" statute was enacted. The written admission that the debt was unpaid would negative the presumption that the debt was paid. If the clear language of the statute is followed, the court in any such case has just one question to determine, Has the debtor admitted in writing over his own signature that the debt is unpaid? What his intention may be concerning payment or reliance on the bar of the statute, whether expressed in connection with the written admission or otherwise, becomes entirely immaterial. By admitting the debt is unpaid he lays down the shield that the limitations statute gives him and elects either to rely on other weapons of defense or submit to judgment.

In Leland v. Johnson, 227 Iowa 520, 532, 288 N. W. 595, we refer to the fact that Code section 11018 is a statute that does not impose any *condition* to its provisions that a written admission shall revive the debt. I think the statement is true. But the majority opinion here in effect repudiates it: "An admission, which the writer qualifies in the next breath by the assertion of the defense of the statute, is not the kind of an 'admission' contemplated * * *."

By what right or authority may we thus condition and limit the language of the statute? We are concerned here, not with what the law ought to be but with what it is. It may be conceded the instant case is one that arouses our sympathy for a worthy debtor who under earlier and more favorable conditions became liable for a debt not his own. But in deciding his case we should follow the law as already established and not attempt to modify it for the purpose of the particular case. Too often hard cases make wrecks of the law. If the statute is to be modified, the legislature and not we should do it.

The majority opinion can only be justified by a return to the discarded doctrine of the necessity for an implied promise to pay, or by some new theory of implied waiver of the statute of limitations by reason of the admission. Otherwise, the fact that the language used expressly excludes the possibility of an implied agreement to pay or an implied waiver of the defense of the statute would have no significance. Either theory is

entirely inconsistent with our repeated pronouncements that the admission, like any other statement against interest, need not be made to the one to whom the debt is payable. I am not willing to throw these cases overboard.

I would reverse the decision of the district court.

BLISS, J., joins in this dissent.