TONY SCHROEDL and CATHERINE SCHROEDL, appellants, v. LEO V. McTAGUE and FRANCES McTAGUE, appellees.

No. 51223.

(Reported in 129 N.W.2d 19)

774

June 9, 1964.

James Furey, of Carroll, for appellants.

Page & Nash, of Denison, for appellees.

Thompson, J.—The plaintiffs on October 5, 1961, filed their action against the defendants seeking judgment on a promissory note alleged to have been signed and delivered on January 25, 1947. The note was in the principal sum of $10,000, with several years accrued interest. The defendants answered, raising among other defenses that of the statute of limitations. At the close of the plaintiffs' evidence the trial court granted defendants' motion for a peremptory verdict. From judgment on the verdict the plaintiffs, being understandably not in agreement therewith, have appealed.

In their petition, as amended, the plaintiffs seek to avoid the statute of limitations by allegations that the defendants had in writing and within ten years prior to the commencement of the suit admitted the indebtedness upon which the claim was

based; that these admissions were by federal and state income tax returns, and by letters, addressed by the defendants to the plaintiffs, which were no longer in existence. The trial court refused to admit copies of the income tax returns in evidence, and apparently considered the evidence of the lost or destroyed letters insufficient to warrant submission of the issue to the jury. These rulings raise the important questions in the case.

I. It is evident that unless the provisions of section 614.11 of the Code have been met, the action on the note is barred by the statute of limitations, which we shall hereinafter refer to as the statute. The note was due in one year after date, or on January 25, 1948. Section 614.11, supra, provides: "Causes of action founded on contract are revived by an admission in writing, signed by the party to be charged, that the debt is unpaid, or by a like new promise to pay the same."

We turn first to the question posed by the federal and state income tax returns. Copies of the joint returns of the defendants for the years 1952 through 1955 were offered in evidence and the offer denied by the trial court. The sufficiency of these to comply with section 614.11 raises the first problem here.

The eight exhibits offered are all copies of joint income tax returns to the federal and state governments respectively, for the years 1952 to 1955 inclusive. With one exception they do not show signatures of the defendants; but Leo V. McTague, whose deposition was taken by the plaintiff, said therein that they were copies of the original returns which were signed by himself and his wife, Frances McTague, the other defendant. No objection was raised that the offered exhibits were copies or that they showed no signatures; the only point made being that they were insufficient to constitute admissions of the debt sued upon so as to bring section 614.11 into play. We consider them, therefore, as to their sufficiency to generate a jury question for this purpose.

Each of the eight returns shows in attached schedules a notation of interest paid during the year for which the return was made "Tony Schroedl $400." The stipulated interest in the note in suit was four percent. Tony Schroedl testified that he advanced the sum of $10,000 to Leo V. McTague at the time the

note was given, and that both defendants signed the note at that time. Schroedl and Mrs. McTague are brother and sister.

The defendants contend that the notations of interest paid during the years 1952 through 1955 are insufficient to constitute admissions in writing because they do not adequately or certainly identify the debt on which the interest was paid. This raises a question which has been before this court many times, and under varying factual circumstances. The rule which has come to be accepted is thus stated in Koht v. Dean, 220 Iowa 86, 89, 92, 261 N.W. 491, 494: "It seems clear * * * that it is not essential that the writing upon which an admission is based expressly admit that the debt is unpaid, that it state the amount thereof, and that it specifically refer to the indebtedness which is involved. It is sufficient that an admission that an indebtedness is unpaid is the natural and necessary inference from the writing. The amount and items of the indebtedness and the fact that the writing relates to the indebtedness sued on may be established by extrinsic evidence." This was quoted with approval in Barton v. Boland, 224 Iowa 1215, 1218, 1219, 279 N.W. 87, 88, and in McClure v. Smeltzer, 222 Iowa 732, 736, 269 N.W. 888, 890. Similar language is found in Senninger v. Rowley, 138 Iowa 617, 620, 116 N.W. 695, 697, 18 L. R. A., N. S., 223.

We consider also of importance a statement in Doran v. Doran, 145 Iowa 122, 124, 123 N.W. 996, 25 L. R. A., N. S., 805: "It is only necessary that the admission appear with reasonable certainty to relate to the debt in question, and, if such relation does reasonably appear, it is for the debtor insisting that the admission relates to some other indebtedness to show its existence."

In Wentland v. Stewart, 236 Iowa 661, 668, 19 N.W.2d 661, 664, 161 A. L. R. 1206, we said: "Our decisions abundantly support the proposition that the writing need not specifically describe the debt or its amount and that identification in these respects may be established by extrinsic evidence."

It remains then to see whether the facts in the case before us bring it within the range of these authorities. Here it is significant that the interest paid during the years from 1952 through 1955 was the exact amount of interest due on a note for

$10,000 at four percent per annum. The deduction that there was an existing indebtedness is inescapable; one does not pay interest on a nonexistent debt.

 It is true payment of interest does not in itself amount to an admission under section 614.11, supra. But when interest is paid, and its payment is acknowledged in writing signed by the alleged debtor, it may be sufficient. Thus, in Leland v. Johnson, 227 Iowa 520, 529, 530, 288 N.W. 595, 599, 600, reliance for avoidance of the statute was placed on a check in the sum of $120 payable to the claimant, and with a notation in one corner "Interest 1935, 6 months." The debtor's ledger sheets in his business showed an indebtedness to the claimant and the payment of interest thereon, including the check above referred to. We said that while the ledger entries did not constitute an admission under section 614.11, because they were not signed, they were extrinsic evidence of the indebtedness and identified the indebtedness, the interest on which was paid by the signed check. We said: "Under the record herein, the payment of $120 is the exact amount required for interest on $4000 at the rate of six percent per annum for six months. This check was signed by the decedent. Under our holdings, the instrument, which is signed by the decedent, constitutes an admission that an indebtedness is unpaid, and the fact, that the writing relates to the indebtedness sued upon, has been established by extrinsic evidence."

In the case before us the "extrinsic evidence" was furnished by the testimony of the plaintiffs. We are unable to distinguish Leland v. Johnson, supra, factually or legally, from the instant case.

We find support for the use of interest checks to support proof of a principal indebtedness in In re Estate of Stratman, 231 Iowa 480, 486, 487, 1 N.W.2d 636, 641. This case involved a claim against an estate, and there was contention as to there being sufficient proof. Several checks were received in evidence. We said: "The amounts of these twelve checks closely correspond to the amount of interest computed at either 5% or 6% on either $4750 * * * or $4000 * * *. Surely from the foregoing a jury could find that decedent was owing appellant $4000

at the time of his death. Appellee argues, however, that the evidence is insufficient to show that the debt is the one for which claim is made. We are unable to agree with appellee's contention and hold that the evidence was sufficient to warrant submission to the jury." If this evidence was receivable to show the existence of an indebtedness, we can see no reason why similar, and somewhat stronger evidence, should not be admissible to show an acknowledgment of an existing indebtedness. The Stratman case is also authority for the rule that a written acknowledgment made in signed assessment rolls is a sufficient acknowledgment of debt to avoid the statute. In re Estate of Stratman, supra, loc. cit. 231 Iowa 489, 1 N.W.2d 643. The written acknowledgment is sufficient if it is signed; it need not be addressed to or delivered to the creditor. Leland v. Johnson, supra, loc. cit. 227 Iowa 531, 288 N.W. 598.

■ We hold that the income tax returns sufficiently acknowledged an existing indebtedness which could be identified by extrinsic evidence, in accordance with the authorities cited above. They should have been admitted in evidence, and it was then for the defendants to deny their relation to the note sued upon, if such denial was available to them.

■ II. Next we come to the question of the letters, which the plaintiffs testified they had received through the years and which they had destroyed. They offered secondary evidence, some of which was received and some excluded upon objection. The tenor of the evidence received was that some twenty letters had been sent them by the defendant Leo V. McTague, in each of which he acknowledged the indebtedness. The contents of one letter in particular, which plaintiffs said was received in 1956, were testified to that the writer said "he absolutely could not pay anything on the note at that time and the interest at that time." Both plaintiffs testified to this. When asked as to the substance of other letters received, as to which they could not quote the contents verbatim, an objection that the question called for a conclusion was sustained; an obviously erroneous ruling. No offer of proof was made, and the defendants rely upon this to uphold the refusal. Whether this was a situation in which the answer was so obvious that no offer was necessary

we do not decide, in view of a retrial required because of other errors.

■ The substantial question at this point concerns the contention of the defendants that secondary evidence of the contents of the letters was not admissible because the plaintiffs had destroyed them and so put it out of the power of the defendants to show what the contents really were. Each plaintiff testified that the letters were received over a period of years, at least from 1956 to 1961. We have pointed out there was a close family relationship. The evidence of the plaintiffs is that the families visited often, went to conventions together, and generally were on excellent terms, until the friendship was terminated by the not uncommon method of one friend loaning the other money. They said they did not ordinarily keep letters about their home, and although they had searched every possible place they could not find them. They had been destroyed.

The general rule is thus stated in 20 Am. Jur., Evidence, section 438, page 391: "A party to a trial is not precluded from introducing secondary evidence of the contents of a destroyed instrument although he himself destroyed the instrument deliberately and voluntarily, if, at the time he did so, he acted under an erroneous impression as to the effect of his act or under other circumstances which render his act free from all suspicion of intentional fraud." To the same effect is 32 C. J. S., Evidence, section 824, page 752.

The rule has been applied in several cases from other jurisdictions. In In re Estate of Baker, 144 Neb. 797, 806, 14 N.W.2d 585, 591, 155 A. L. R. 950, 960, is this language: "* * * and even if their destruction is voluntary secondary evidence may be given if the circumstances accompanying the act are free from suspicion of intent to defraud and consistent with an honest purpose." See also Booher v. Brown, 173 Ore. 464, 146 P.2d 71, 75, where in an equity case the court, although stating the rule, weighed the evidence and found it against admission; Crosby v. Little River Sand & Gravel Development, 212 La. 1, 31 So.2d 226, 229; and Reynolds v. Denver & Rio Grande Western Railroad Co., C. C. A., 10th Cir., 174 F.2d 673, 676.

■ ■ There seems no good reason for holding here, as

a matter of law, that the destruction of the letters by the plaintiffs was so tainted with fraud that secondary evidence of the contents should be excluded. The parties were on intimate terms; no litigation was foreseen, so far as the record shows; in fact the interest was unpaid for five years before this suit was commenced; Tony Schroedl believed, in fact had been advised by a Nebraska attorney, that the payment of interest, which was through 1955, stopped the running of the statute; and both plaintiffs testified to the reason for destroying the letters, which was, according to them, nothing more than that they had no system for keeping correspondence and did not usually keep it. At all times in our consideration of this case we must keep in mind the settled rule that when a verdict has been directed against a plaintiff, his evidence must be given the most favorable construction it will reasonably bear. There was a jury question as to the contents of the letters and the good faith of the plaintiffs in destroying them. In fact, the learned trial court seemed to recognize this when, in directing the jury to return the verdict, it said: "I would be placing before this jury a terrific job to decide who was telling the truth." We suggest that such a burden is a normal part of a jury's functions.

We come next to a determination whether secondary evidence may be received under any circumstances to show the contents of writings claimed to have admitted an indebtedness so as to bar the defense of the statute. It is said the admission of such evidence opens the door to fraud. The same claim may be made against any secondary evidence of the contents of lost or destroyed writings. Such evidence is usually material and important to the issues in the various cases in which it is employed. So secondary evidence of what was claimed to be written recognition of an illegitimate son was held admissible in Watson v. Richardson, 110 Iowa 673, 677, 80 N.W. 407, 409. In re Estate of McCullum, Fla., 88 So.2d 537, 539, holds: "* * * the fact of written acknowledgment of paternity may be established by secondary evidence under the general rules relating to the admissibility of secondary evidence of lost or destroyed writings."

It seems to follow that, if secondary evidence of a writing which would establish the important rights of an illegitimate son to a share in the property of the putative father is admissible, such evidence of lost or destroyed letters which admit an indebtedness so as to toll the statute or revive a cause of action should likewise be admitted. In fact, we ourselves have considered it to be so, without question. In Craig v. Welch, 231 Iowa 1009, 1014, 2 N.W.2d 745, 747, an action to foreclose a real-estate mortgage, the statute was pleaded as a bar. An attempt was made to show that a written instrument admitting the debt was lost, and evidence was offered as to its contents. The action being in equity, we said: "It is the settled rule that the former existence, execution, delivery, loss and contents of a lost instrument must be shown by clear, satisfactory and convincing evidence in order to establish the same. * * *." In a law action, of course, the required proof would be by a preponderance of the evidence.

In Barton v. Boland, supra, there was again a claim of a lost instrument, the contents of which were in dispute. The action being in equity, we weighed the conflicting testimony and followed the findings of the trial court as to the facts. Loc. cit. 224 Iowa 1217, 1219, 279 N.W. 89. In neither of these cases was there any suggestion that secondary evidence of the contents of lost writings could not be received to show an admission of indebtedness within the purview of section 614.11. It was accepted, as we think it should be, that such evidence is admissible; it was considered, and weighed, and found wanting; not because it was inadmissible, but because it lacked sufficient probative value.

The infirmity of possible fraud exists in all cases where secondary evidence of lost writings is admitted. The writings themselves would be far preferable in ascertaining the true facts. But when they are lost or destroyed, the law does the best it can subject to the rules set out in our foregoing discussion. Most oral testimony is subject to the same objection, whether it concerns lost instruments, or the facts of automobile accidents, or crimes, or other matters which admit of factual disputes. There is always the possibility that a case may be

made by someone bearing false witness. But lost wills, and deeds, and other instruments of the greatest importance may be proven by parol testimony, if the proper foundation is laid. There is no reason for making an exception to secondary evidence of lost writings claimed to be admissions of the existence of a debt. The human infirmities of lack of knowledge, or understanding, or recollection, or, unfortunately at times, of character and integrity, will usually deprive oral testimony of that certainty desirable in all cases and generally found in written documents. The trier of the facts must decide.

It should be noted that there is no evidence that the defendant Frances McTague signed any of the letters which plaintiffs claim to have received. So if the same situation exists on a retrial, the evidence of the lost writings should be limited to its applicability to Leo V. McTague; and the jury should be so instructed.

III. Our holdings in the two preceding divisions require a reversal and remand for another trial. However, there are two other matters which call for comment. One of the assigned errors of the plaintiffs is that the court erred in retaining the defenses asserted by the defendants. We have dealt with the pleaded defense of the statute of limitations. Other defenses, to which we address our attention, were that the note in suit, whose execution is not denied, was in fact only a receipt for an investment by the plaintiffs in a business venture in which the·plaintiffs and defendants were to engage. This pleading, found in the separate answers of both defendants, was attacked in various ways by the plaintiffs as being an attempt to vary and contradict a written instrument by parol. This was, of course, an attempt by the defendants to plead an affirmative defense, and since the verdict was directed at the close of the plaintiffs' case no evidence was offered or received upon it. What the court's attitude was on the question is difficult to determine from the confusing record presented. At one time the trial court, through another judge, seems to have held the defense good; but a statement of the court just before the beginning of the trial indicates that it would have refused to permit evidence on the question.

In view of another trial therefor we think it proper to say that the defense should have been stricken. The instrument is plainly a promissory note and nothing more. No attempt is made to reform it and no fraud is pleaded. The defendants in their argument here say only that "The appellees' most serious defense to the plaintiffs' alleged cause of action is, of course, the statute of limitations, and we will not burden the Court by making any argument or setting out any brief with respect to the alleged failure of consideration with respect to the defendant Frances McTague, or the question of joint venture introduced in the case by the counterclaim of Leo V. McTague, but merely assert that the rulings of the court thereon were correct." We find the question of joint venture was introduced into the case, not only by the counterclaim of Leo V. McTague, but by the answers of each defendant. The pleadings of course imply that evidence would be introduced to sustain their allegations.

The defense is clearly an attempt to vary and contradict the terms of the note by parol evidence, and so improper. This seems so clear that citation of authority is needless; but see Stebens v. Wilkinson, 249 Iowa 365, 372, 87 N.W.2d 16, 20, 71 A. L. R.2d 277.

IV. The defendant Frances McTague also pleaded lack of consideration. Her theory at this point seems closely related to the claim that the note was in fact intended to be a receipt, as set out above. We have in the foregoing division held this defense not available. If it be contended that there was lack of consideration because none of the $10,000 advanced was received by her, it must be noted that if she signed the note at the same time as her husband and at the same time the money was paid over by the plaintiffs to him, as the evidence of the plaintiffs showed, this defense is not open to her. First, we call attention to Code section 541.24: "Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration, and every person whose signature appears thereon to have become a party thereto for value."

Of course this makes only a prima facie case of consider-

ation. But we held in Starry v. Starry & Lynch, 212 Iowa 274, 278, 279, 280, 234 N.W. 281, 284: "It is the general rule of law that where a contract has the support of a consideration, such consideration is applicable to every original party thereto. * * * The note in suit was executed and delivered in purported consummation of the contract. It was accepted as such. It had a lawful consideration. Under the general rule, such consideration operated upon *all the contemporaneous signers thereof.*" We quoted this with approval and followed it in Knapp v. Knapp, 251 Iowa 44, 50, 51, 99 N.W.2d 396, 400.

V. Both parties relied to some extent upon estoppel. We find no sufficient evidence thereof.

VI. The counterclaim of the defendant Leo V. McTague pleads an engagement by the plaintiffs to participate in a business venture with him; that the venture failed, with loss to the counterclaimant, and that plaintiffs are indebted to him for their proportion thereof. This part of the case seems not to have been disposed of. While we have held that the note in suit may not be contradicted by evidence that it was in fact a receipt, we make no pronouncement upon the right of the defendant to plead and prove, if he can, the joint venture and the liability of plaintiffs thereon.

VII. The record before us is difficult to follow. The pleadings, motions, and rulings of the court comprise 57 pages. There is a considerable amount of colloquy, and it is not always possible to be certain what the exact ruling of the court was. However, as the defendants say, the important point in the case revolves around the statute of limitations and the alleged writings which are claimed to nullify its effect, under section 614.11. On this we have held the evidence sufficient to require submission to the jury.—Reversed and remanded.

All JUSTICES concur except HAYS, J., not sitting, and SNELL, J., dissenting.

SNELL, J.—I respectfully dissent from the holding of the majority in two important particulars.

I. I agree that the income tax reports of defendants were admissible to show payment of interest. I also agree with the

statement that "payment of interest does not in itself amount to an admission under section 614.11." Unless we ignore this statement and the authorities in support thereof the evidence appears insufficient to toll the statute of limitations. The only "extrinsic evidence" relied on by plaintiffs and accepted by the majority opinion is the testimony of plaintiffs that they had received and destroyed letters and the testimony of Mrs. Schroedl that there was no other indebtedness between the parties.

The majority admits that payment of interest is not an admission under the statute. Partial payments are not sufficient. Hootman v. Beatty, 228 Iowa 591, 594, 293 N.W. 32, and cases cited therein. Horn v. Anderson, 234 Iowa 1068, 1071, 13 N.W.2d 693. Partial payments endorsed on a note and signed by the maker are not sufficient. Such a writing has been held to be neither an admission nor a new promise. Hale v. Wilson, 70 Iowa 311, 30 N.W. 739.

A note given for interest is not a written admission or acknowledgment of the original debt. Kleis v. McGrath, 127 Iowa 459, 103 N.W. 371, 69 L. R. A. 260, 109 Am. St. Rep. 396. Later cases hold that the admission in writing need not be made to the creditor but may be made to a stranger. The cases do not hold that a showing to the Internal Revenue Service of interest paid is anymore of an admission than an actual showing of interest paid to the creditor.

" 'By our statute the rights of the parties are fixed by the writing, and unless, by its terms, a further sum is admitted to be due, or a new promise is made, the operation of the statute [of limitations] is not arrested.' " Kleis v. McGrath, supra, loc. cit. 466, quoting from Hale v. Wilson, supra.

That this problem is one in which there is judicial dissonance is indicated by the majority opinion, special concurrence and dissent in Horn v. Anderson, supra. I do not think we should ignore the authorities cited.

The case before us is, in my opinion, weaker than any relied on by the majority and a departure from long-standing authorities that have never been overruled.

II. Division II of the majority opinion is almost a repeal of the statute.

Section 614.11 quoted by the majority provides that causes of action founded on contract "are revived by an admission in writing, signed by the party to be charged * * *."

Only one letter from defendants was produced. It said nothing about the debt sued upon.

Plaintiffs testified that over the years they had received some twenty letters from defendant Leo V. McTague in which he acknowledged the debt. Except for the testimony of plaintiffs there is not a scintilla of evidence that there ever were any such letters or as to the contents.

This is not the ordinary case where proof of the contents of a lost instrument may be by secondary evidence. Testimony of plaintiffs, otherwise unsupported, that they received and then destroyed admissions of indebtedness does not in my opinion meet the requirements of the statute that the admission be in writing. To so hold destroys the protection of the statute. It opens the door to the very thing barred by the statute, i.e. recovery on an outlawed claim on the unsupported oral testimony of the plaintiffs that there had been in the past a written admission.

It is true that secondary evidence ordinarily opens the door to fraud but the invitation to fraud is ordinarily not as enthusiastic as here. There is some protection against fraud where proof of the prior existence and contents of destroyed instruments is from a source other than plaintiffs' oral testimony. Here there is none.

The Iowa cases cited by the majority do not support the extreme position reached in the opinion.

Watson v. Richardson, 110 Iowa 673, 80 N.W. 407, was a paternity case where testimony of outside witnesses was received. The case did not depend on testimony of plaintiff. The testimony of the disinterested witnesses was received but found insufficient. Here we have nothing but plaintiffs' testimony.

Craig v. Welch, cited and quoted by the majority, states the rule but factually and in the result does not help the plaintiffs here.

In Barton v. Boland cited by the majority the execution

and delivery of the lost instrument was admitted. "The writing executed was an admission of the indebtedness owing by the appellants." We have no such situation here.

III. As noted by the majority the record is difficult to follow. There are errors and uncertainties but for the reasons stated I would affirm.