BESSIE D. LELAND, Appellant, v. L. R. JOHNSON, Temporary Administrator, Appellee.

No. 44828.

November 21, 1939.

C. W. Harvey, for appellant.

Dyer, Jordan & Dyer, for appellee.

Miller, J.—L. D. Leland died on February 21, 1937. Under his will, his widow, Bessie D. Leland, appellant herein, was appointed executrix and she qualified as such. On May 25, 1937, she filed a claim against the estate for $4,016.67, with interest from the first day of February, 1937, for money invested by her in the business conducted by the decedent under the firm name and style of L. D. Leland & Son, alleging that said money had been the personal and private property of appellant, and had been loaned to the decedent on the oral promise of the decedent to repay her said sum. On the same day that the claim was filed, the appellee was appointed temporary administrator for the sole purpose of hearing the evidence in regard to appellant's claim. Appellee then filed a motion for more specific statement, and appellant amended her claim, stating as follows:

"That she is a woman of advanced years and that her memory is not good and that she cannot remember the exact date on which she loaned money to her deceased husband, L. D. Leland, nor can she remember the exact amount of the original loan.

"That on to-wit, November 1, 1912, the books of account kept by the deceased show that he was indebted to the claimant in the sum of One Thousand Three Hundred Twenty-eight and 74/100 Dollars ($1,328.74) and that the said books show a con-

tinuous series of dealings between the claimant and the deceased up to the time of his death and that the said books show that the last entry made by the deceased was on or about February 1, 1937, at which time the balance due the claimant was the sum of Four Thousand Sixteen and 67/100 Dollars ($4,016.67)."

The amendment also recited payment of interest on the indebtedness by the decedent at regular intervals during the years 1934, 1935 and 1936 on the sum of $4,000, leaving a balance as of February 1, 1937, in the sum of $4,016.67.

Appellee's answer was a general denial and a plea that, "if anything ever was due under the alleged claim, that the same is barred by the statute of limitations."

At the trial, decedent's son, John Clyde Leland, testified that from some time in 1916 to the time of the death of decedent, he had been continuously associated with his father in the wholesale flour and feed business; that, while the business was conducted under the name of "L. D. Leland & Son", the son had no money invested in the business, and his only interest was the right to receive a share of the profits. Following the death of the decedent, with the consent of the other heirs, the son closed out the business and, under order of court, was paid by the executrix for such services.

John Leland identified, and there were introduced in evidence, certain pages from the books of the firm, which had been kept by and were in the handwriting of the decedent. On various pages of the ledger appeared the name "Bessie I. Leland", "B. I. Leland", and "Bessie D. Leland", all of which were identified as referring to appellant. He further testified:

"This record of the account of Bessie D. Leland starts with a credit item in her favor of Thirteen Hundred Twenty-eight and 74/100 Dollars ($1,328.74) on November 1, 1912, and shows a continuous record of this account from that date to February 1, 1937, at which time the last entry was made prior to the death of L. D. Leland. The record consists mainly of credit items most of which covered interest for one month on the amount of the account as then shown by the record. In a few cases one month was skipped and on the last day of the following month a credit covering interest for two months was entered."

The pages of the ledger are substantially as above described. He also testified that the amount of interest credits appearing under appellant's account in the ledger were entered in the journal as items of expense of operating the business. He also identified a series of counterchecks and other bank checks drawn on the Boone State Bank & Trust Company, as being in the handwriting of the decedent, bearing the signature "L. D. Leland & Son", and several of them bearing the initials "L. D. L." under the signature of the firm. The dates and amounts of these checks correspond to entries on the pages of the books where it is shown that interest was paid on the indebtedness shown to be due appellant. These checks had in many instances notations in the lower left-hand corner such as "Bessie int.", "Bessie D. Leland", "Mrs. L.", "Bessie", etc., all of which notations were subject to the interpretation that they refer to the indebtedness due appellant. These checks commenced in 1934 and ran through to January 2, 1937.

The cashier of the Boone State Bank & Trust Company was also called as a witness, and he testified that the checks, above referred to, were deposited in a savings account opened by decedent under the name of "Bessie D. Leland or L. D. Leland", the deposits being made in each instance by the decedent. Where it was necessary to endorse the check for the purpose of deposit, endorsement was "Bessie D. Leland by L. D. L.". This witness testified that other deposits were made during the same period in the account, and that the balance in the account was withdrawn after the death of the decedent by the appellant. It was stipulated by the parties that the money was withdrawn by appellant in her individual capacity and not as executrix of the estate.

At the close of appellant's evidence, appellee moved the court to render judgment dismissing the claim, asserting various reasons, among which were included the following:

"2. The claim shows on its face that it is merely a debt and does not constitute an open, continuous account existing between the decedent and the claimant.

"3. The evidence shows *without dispute* that the claim is barred by the statute of limitations. * * *

"5. The evidence conclusively shows that there has been no revivor of the account, and if it should be classified by the

Court as an open, continuous, current account, the crediting of items of interest do not toll the statute.''

The matter was taken under advisement by the court, written briefs were filed, and the matter submitted. The court decided that the defense of the statute of limitations, raised by appellee in his answer, and again presented to the court by his motion for judgment, should both be sustained. Accordingly, the claim was dismissed at appellant's costs. From this judgment, appellant appeals to this court.

In support of her appeal, appellant urges upon this court two propositions, in support of her contention that the court erred in sustaining the defense of the statute of limitations herein. The first proposition is based upon section 11011 of the Code, applicable to the accrual of an action based upon a continuous, open, current account. The second proposition is based upon section 11018 of the Code, applicable to the revival of a cause of action after the statute has run, by an admission in writing signed by the party to be charged, that the debt is unpaid.

I. In support of appellant's first contention, that the court erred in failing to apply section 11011 of the Code to the record herein, appellant states:

''The plaintiff's claim against the estate was filed on May 25, 1937. The books kept by the deceased and in the handwriting of the deceased showed a continuous series of dealings between the claimant and the deceased over a period extending from November 1, 1912, to January 31, 1937. At no time during this period was the account closed. At various periods of time including the last three years of Mr. Leland's life regular interest payments were made by him to Mrs. Leland. During the year 1931 several items besides the interest payments were involved in the account.''

In support of the above proposition, appellant relies upon our statement in the case of Tucker v. Quimby, 37 Iowa 17, at page 19, to wit:

''An account to be 'continuous,' must be without break or interruption. By the term 'open,' we mean something that is not closed, and the term 'current', as used in the statute, signifies 'running,' 'passing,' a 'connected series.' See Webster's

Unabridged Dictionary. Hence, a 'continuous, open, current account,' is an account which is not interrupted or broken, not closed by settlement or otherwise, and is a running, connected series of transactions.''

Appellant also relies upon our statement in the case of Keller v. Jackson, 58 Iowa 629, at page 631, 12 N. W. 618, at page 619, wherein we state as follows:

''We have held that the statute of limitations commences running from the last item in the account, whether it be on the debit or credit side thereof. Thorn & Stien v. Moore, 21 Iowa 285.''

Other cases are cited by counsel for appellant and numerous cases are urged upon us by counsel for appellee. It is not necessary to discuss them. The foregoing statements are sufficient for our purposes. It will be noted that, in the Tucker case, we recognized that the continuous, open, current account is a ''running, connected series of transactions''. While we recognize in the Keller case that, where the statute is applicable, the cause of action shall be deemed to have accrued on the date of the last item in the account, ''whether it be on a debit or credit side thereof,'' we have never held that the mere posting of items of interest, applicable to one individual transaction, is sufficient to constitute the matter a ''connected *series* of transactions'', such as contemplated by the statute. Were we to so hold now, it is difficult to conceive a case in which the statute of limitations would ever be applicable to a liquidated debt. If the mere fact, that the *debtor*, in recording his obligation, has posted on his ledger sheet the accrual of interest, would be sufficient to constitute the matter an open account, why would not the same result obtain if the *creditor* employed such a method of bookkeeping? If the creditor could do that, then a liquidated debt would never accrue, from the standpoint of the statute of limitations, until the creditor ceased to post upon his ledger the accrual of interest on the indebtedness. We have carefully read all of the decisions cited by counsel for appellant, and have made independent research on the question. We find no authority for any such ruling, and are abidingly convinced that the statute is not subject to any such interpretation.

This claim is based upon an alleged oral contract on the

part of the decedent to repay the appellant money loaned by appellant to the decedent. The trial court was clearly warranted, under the record herein, in finding that, if there was any such loan and promise, the transaction occurred prior to November 1, 1912, and the mere posting of interest, as it accrued, did not convert the matter into an open account. Since the record did not show a sufficient basis for applying the provisions of section 11011 of the Code, there is no merit in appellant's first proposition.

II. In support of appellant's second proposition, that the court erred in sustaining the defense of the statute of limitations, because the evidence showed that the deceased "had made written acknowledgment of the debt such as to revive it even if the statute of limitations had at some time run against it," by virtue of section 11018 of the Code, appellant urges upon us various holdings of this court.

In the case of McClure v. Smeltzer, 222 Iowa 732, at page 735, 269 N. W. 888, at page 890, we state:

"The determination of this question must be considered in connection with the rule that it is not requisite for the sufficiency of such admission to show that the party said in so many words, 'I admit that this note is unpaid.' It is sufficient if the words used contain an *implication* of the *existence* of the debt and that it is unpaid."

Again, in the case of Barton v. Boland, 224 Iowa 1215, at page 1219, 279 N. W. 87, at page 89, we state as follows:

"The writing executed was an admission of the indebtedness owing by the appellants. It is not necessary that the amount thereof be stated and that it specifically refer to the indebtedness which is involved. Under the rules of law established by this court in the very recent cases cited herein, 'it is sufficient that an admission that the indebtedness is unpaid is the natural and necessary *inference* from the writing. The amount and items of indebtedness and the fact that the writing relates to the indebtedness sued on may be established by *extrinsic evidence*.' "

In the case of Kleis v. McGrath, 127 Iowa 459, 103 N. W. 371, 69 L. R. A. 260, 109 Am. St. Rep. 396, we held that the giving of a note for interest did not constitute an "admission

in writing, signed by the party to be charged, that the debt is unpaid'' sufficient to comply with the statute. However, by way of dicta appearing, at page 463 of 127 Iowa, 103 N. W. at page 372, 69 L. R. A. 260, 109 Am. St. Rep. 396, we state:

''If the defendant, in addition to his written promise to pay said sum, had added thereto by way of explanation the words 'interest on my note now held by said payee,' this would have been an acknowledgment that appellant held an unpaid note against him, and parol testimony would have been competent to point out and identify the note to which reference was made. Penley v. Waterhouse, 3 Iowa 418.''

In the case of Miller v. Beardsley, 81 Iowa 720, 45 N. W. 756, the writing relied upon was a letter from the debtor to his creditor wherein he stated:

''On Saturday, the twenty-seventh inst., I paid S. S. Wilcox interest on nine thousand dollars which you have received probably before this time, part of which was not due. Mr. Wilcox figured the interest out that was not due, saying he did not know how you would like it. If that does not meet with your approval we will fix it some other way.''

In construing this writing, we state, 81 Iowa at page 722, 45 N. W. at page 757:

''The admission or promise can only be proven by such writing, but when an admission or promise is so evidenced, other proofs are admissible to show the writing, and that the debt admitted or promised to be paid is the particular debt sued upon. * * * In determining whether the letter shows an admission that the debt is unpaid, or a promise to pay the same, we may consider the allegation that Wilcox was agent for the plaintiff, and that the interest was paid to him as such agent.

''From these allegations and the letter, we have this state of facts: That on March 27, 1886, defendant paid to S. S. Wilcox, as agent for plaintiff, interest due and that was not due on nine thousand dollars. While it is possible that interest may be due from one party to another, without there being any indebtedness for the principal upon which it accrued, such is seldom the case. In the absence of proof to the contrary the

payment of interest warrants the conclusion that there is an indebtedness for the principal."

In the case of Doran v. Doran, 145 Iowa 122, at page 128, 123 N. W. 996, 998, 25 L. R. A., N. S., 805, we state as follows:

"The written admission contemplated by the statute seems to be analogous to the memorandum in writing generally required under the statute of frauds as enacted in different states to establish a sale of goods or merchandise when the goods have not been delivered, and no part of the price has been paid. It is well settled that such a memorandum need not be in form or effect a written contract, and that it is required only as furnishing the essential evidence of the contract of sale as against the party to be charged. Such a memorandum need not be delivered to the opposite party nor his agent nor a person in privity with him, but it is sufficient if it is signed and in any way promulgated so as to become an instrument of evidence."

In the case of Senninger v. Rowley, 138 Iowa 617, at page 620, 116 N. W. 695, at page 697, 18 L. R. A., N. S., 223, we state as follows:

"It is not necessary that both an admission of the debt and a new promise to pay shall be made and signed by the party, but either is sufficient. Stewart v. McFarland, 84 Iowa 55.

"Nor is it requisite to the sufficiency of an admission that the party shall say in so many words 'I admit that this note is unpaid.' It is enough that such an admission is the natural and necessary *inference* from the writing. If A. demands of B. the amount of an alleged indebtedness, and B. thereon writes, signs, and delivers to A. his check for such amount, the check so delivered admits of no other reasonable construction, except as an admission of the debt for the payment of which it is given. So also of the letter offered in evidence. Its language contains a clear *implication* of the existence of the debt and the obligation of the writer to pay it. To have the effect of an admission within our statute, it is not required that the writing specifically describe the debt or mention its exact amount, but the identification of the debt and of the amount due may be shown by extrinsic evidence."

And in conclusion in that case, we state, 138 Iowa at page 622, 116 N. W. at page 698, 18 L. R. A., N. S., 223:

"The defense of the statute of limitations is not to be condemned in any case to which it is clearly and fairly applicable, but a court should not and will not go out of its way to give its benefit to a man who seeks to take advantage of the leniency of his creditor to defeat the collection of a just debt which he admits has never been paid."

Applying the foregoing pronouncements of this court to the facts shown by the record herein, we are of the opinion that the trial court erred in holding that the evidence introduced by appellant was insufficient to bring the case within the contemplation of section 11018 of the Code. The record showed a continuous and unbroken line of entries in the books kept by the decedent showing that he was indebted to appellant. Appellant urges that these entries, having been made in the handwriting of the deceased, were admissible under the provisions of section 11280 as regular entries made by one deceased against his interests. Of course, this statute applies as to the admissibility of the evidence. Since no objection was made to the admissibility of the evidence at the trial, the question of its admissibility is not presented to us for determination. However, it is important to note that counsel for appellee, in their brief and argument, in discussing this statute, tacitly concede that the entries were against the interests of the decedent and amounted to admissions by him that he was indebted to appellant in the amount shown by the entries. Counsel contend, however, that the entries in the ledger are not sufficient to come within the contemplation of section 11018 because they were not signed by the decedent, and the section requires that the writing be signed by the party to be charged. The position of counsel on this latter proposition is sound, but the entries in the ledger are very important in construing the checks which were signed by the decedent.

A photostatic copy of one of the checks is set out in the abstract. It appears to have been executed on January 7, 1936, and was paid by the bank on that date. It is drawn to the order of "Bessie D. Leland for deposit", is in the sum of $120, is signed "L. D. Leland & Son" with the initials "L. D.

L." thereunder. In the lower left-hand corner is the notation "Interest 1935, 6 months".

As heretofore pointed out, the ledger shows that, during the years 1934, 1935 and 1936 the decedent paid to the appellant, by similar checks, amounts which constituted interest on $4,000. Prior to January 1, 1935, the interest was paid at the rate of five per cent. During 1935 and 1936, however, it was posted and paid at the rate of six per cent. The ledger shows $60 paid April 13, 1935, and $60 on July 27, 1935. We think it obvious that the next entry on the ledger, "January 7, 1936, $120.00", refers to the check in question, and that it constituted payment of six per cent interest due on the $4,000 indebtedness owing appellant for the last six months of 1935.

Under this fact situation, it seems to us that our holding in the case of Miller v. Beardsley, 81 Iowa 720, 45 N. W. 756, is controlling. As above pointed out, we there held that the defendant's letter, acknowledging the payment of interest, coupled with an allegation that the interest was paid to an agent of the plaintiff, was an admission, in the absence of proof to the contrary, that there was an indebtedness owing for the principal. Under the record herein, the payment of $120 is the exact amount required for interest on $4,000 at the rate of six per cent per annum for six months. This check was signed by the decedent. Under our holdings, the instrument, which is signed by the decedent, constitutes an admission that an indebtedness is unpaid, and the fact, that the writing relates to the indebtedness sued upon, has been established by extrinsic evidence.

Section 11018 of the Code applies to "causes of action founded on contract." Appellant alleges an oral contract to repay money loaned to decedent. The only evidence introduced to prove that there was such a contract was the ledger of the decedent. Appellee asserts:

"We have no promise in the evidence of any kind of Mr. Leland's to pay the claimant the sum of money demanded. We have nothing to show the existence of a contract, which is required by statute before the law of revivor can be applied."

In discussing the question of the sufficiency of the evidence to establish an oral contract, in the case of In re Estate of New-

son, 206 Iowa 514, at page 518, 219 N. W. 305, at page 307, we state:

"The existence of the mutual understanding, the proposal and acceptance, may be implied from conduct and circumstances. These may be shown by circumstantial evidence, or by the admission of the party to be charged. Ball v. James, 176 Iowa 647, 655; Hankins v. Young, 174 Iowa 383, 392; Spicer v. Administrator of Estate of Spicer, 201 Iowa 99, 101, Ridler v. Ridler, 93 Iowa 347; 13 Corpus Juris 767, 768; Franklin v. Tuckerman, 68 Iowa 572."

In view of the fact that decedent, for twenty-four years, posted on the books of his business a liquidated indebtedness to appellant on which interest was posted, often monthly, we conclude that the conduct and circumstances, circumstantial evidence, and admissions of the party to be charged were a sufficient showing of the existence of a contract to make the statute applicable.

One other question remains to be considered. In the argument of appellee, counsel cite a statement in 37 C. J. at page 1137 to the effect that:

"The weight of authority is, however, that to take the debt out of the statute—particularly where the debt is already barred—the acknowledgment or promise must be made, not to a stranger, but to the creditor himself or to some one acting for him."

Appellee insists that, since the check was not delivered to appellant or to any one acting for her, the writing is not sufficient. To answer this contention, it is only necessary to state that the sentence, preceding the one above quoted from the text, reads as follows:

"In some jurisdictions a promise or acknowledgment of a debt, although made to a stranger, is sufficient to take the debt out of the operation of the statute of limitations, *especially in a jurisdiction where a statute providing that a written admission shall suffice does not impose any condition;* and it seems to have been the rule at common law that a sufficient acknowledgment to bar the presumption of payment could be made to a stranger."

532

Among the authorities, cited to support the above statement, is our holding in the case of Doran v. Doran, supra, heretofore quoted from. It will be noted that the rule announced by us in that case is "especially applicable in a jurisdiction where a statute providing that a written admission shall suffice does not impose any condition." Section 11018 is such a statute. We, therefore, hold that the rule announced by us in Doran v. Doran, supra, is sound and we adhere to it.

Appellee's motion was made at the close of appellant's testimony. The record before us does not show that appellee rested or waived the right to introduce evidence. Other matters are presented by the issues herein besides the issue of the statute of limitations. In view of the fact that the trial court erroneously dismissed the claim solely on the theory that the statute of limitations was a good defense, the judgment herein is reversed and the cause remanded for further proceedings in harmony with this opinion.—Reversed.

OLIVER, C. J., and HAMILTON, HALE, STIGER, and BLISS, JJ., concur.