G. A. WENTLAND, Appellee, v. M. EDITH STEWART, Appellant; R. RAY STEWART, Cross-Appellee.

No. 46713.

JULY 27, 1945.

Larson & Carr and R. W. Zastrow, all of Charles City, Remley J. Glass and F. A. Ontjes, both of Mason City, for appellant.

W. G. Henke, of Charles City, for appellee.

SMITH, J.—The mortgage involved here was executed March 1, 1928, by appellant, M. Edith Stewart, owner of the

mortgaged premises. It specifically secured two notes of the same date, both bearing interest at five and one-half per cent per annum and due December 1, 1933. One was for $3,000, the other for $500, and both were signed by appellant and her brother, R. Ray Stewart, defendant.

The mortgage contained a provision securing any other present or future indebtedness of appellant to appellee and thereby covered a third note included in this suit (Exhibit C in the record), also dated March 1, 1928, for $500, signed by both defendants, due, however, a year earlier (December 1, 1932) and bearing interest at seven per cent per annum. All three notes sued on herein provided for interest after maturity at eight per cent per annum and each contained an acceleration clause operative at the holder's option upon ten-days' default in payment of interest or failure to perform any of the covenants of the mortgage. The mortgage had substantially similar acceleration provisions.

Defendants, with their sister, Mildred L. Stewart, have lived on the mortgaged premises since 1905. The premises were deeded to appellant by her parents in 1924.

This suit was started November 27, 1943. The note, Exhibit C, was then by its terms more than ten years past due. The other two lacked only a few days of being in the same condition.

Appellant relies upon two propositions: (1) That Exhibit C had been materially altered without her consent and because all three notes represented but one debt all were rendered void by reason of said alteration; and (2) that on or about December 1, 1932, appellee accelerated the due date of the indebtedness by declaring all notes due and collectible and that all were therefore barred by the statute of limitations when suit was commenced. No claim of payment is made.

Appellee denies the allegations of material alteration, denies that there was any acceleration of due dates, and alleges further that on or about December 26, 1941, appellant admitted in writing that the debt was unpaid, thereby reviving or renewing the cause of action.

The trial court held there had been no material alteration; that the evidence showed acceleration of the due date of the

notes; but that appellant had made written admission of indebtedness sufficient to revive the debt as to her. Judgment was rendered accordingly and defendant M. Edith Stewart appealed. There was a cross-appeal by plaintiff not material here. See Wentland v. Stewart, 236 Iowa 258, 18 N. W. 2d 305.

There was also a $600 note dated March 1, 1928, and one for $95.84 dated November 9, 1931, once secured by the mortgage, but they are not involved here except in connection with the application of a payment of $150 (hereinafter discussed) made by appellant December 26, 1941, "To apply on Interest on the M. Edith Stewart farm."

██ I. The claimed alteration of Exhibit C consisted of a handwritten notation near the upper left corner of the face of the note, as follows: "12/27/41. Extended to 12/1/1943, G. A. Wentland." Appellee testified this notation was made pursuant to an oral understanding with defendants. Defendant R. Ray Stewart denied the conversation but there is no denial by appellant.

Whether there was or was not such an oral extension agreement is immaterial so far as concerns the question of material alteration. The notation, signed only by appellee, is, of course, insufficient, standing alone, to constitute a written extension or to establish the making of an oral agreement for an extension.

But it is not and does not purport to be an alteration of the terms of the original agreement. Rather, it confirms, or assumes the correctness of, the original instrument and attempts to evidence a new agreement extending the time for payment. See 3 C. J. S., Alteration of Instruments, section 29b(2). As a memorandum it fails of its purpose, but it is not an alteration invalidating the note, although written thereon. Cresco Union Sav. Bk. v. Terry & Terry, 202 Iowa 778, 211 N. W. 228.

Assuming that the making of the notation was unauthorized by defendants, we are nevertheless unable to see that it was fraudulent. It was dated and signed and not calculated to deceive appellant, who knew whether she had entered into an extension agreement. It was a mere memorandum made by the payee of the note. See Schafer v. Jackson, 155 Iowa 108,

135 N. W. 622; 2 C. J. 1213, note 45, citing Moore v. Macon Sav. Bk., 22 Mo. App. 684; 2 C. J. S., Alteration of Instruments, section 29.

We have read the cases and Code sections cited in appellant's brief. We do not deem them applicable here. For the reasons stated, appellant's contention must be denied.

■ II. Appellant's claim that appellee accelerated the due date of the notes is based upon the testimony of defendants and their sister. In substance, they testified to a conversation the latter part of November 1932, in which appellee, after pointing out that defendants were in default since December 1, 1930, and taxes were due and unpaid, said: ''All is now due; if all payments of principal and interest are not made by the first of December, I shall foreclose and sell the farm''; and a few days later (December 5, 1932): ''They are all due now, and now all is at eight per cent.'' There were no payments thereafter endorsed on the notes in suit until December 27, 1941, except a sixty-six-cent endorsement on one, not necessary to consider.

Appellee denied these conversations. No foreclosure or other proceeding was ever commenced except the instant suit. The plaintiff here prayed for judgment according to the unaccelerated due dates of the notes.

We are asked on this record to hold that appellee accelerated the due date of these notes and that the entire debt was consequently barred when suit was commenced. The trial court found:

''That the Plaintiff's declaration of December 5th, 1932 effected acceleration of the maturity dates of the obligations sued on. * * * it is the Court's opinion and conclusion that the positive declaration of the Plaintiff was sufficient to constitute acceleration, without any further affirmative or overt act.''

Ignoring the possible dispute of fact involved, we are not convinced of the soundness of the proposition of law implicit in this pronouncement. The authorities cited pro and con in the briefs are not conclusive.

We are dealing here with acceleration clauses effective only at the holder's option and with their effect upon the

running of the statute of limitations. Such clauses are always held to be for the creditor's benefit. Annotation 34 A. L. R. 900. This court has so held even when the clause in question was not by its terms optional. Watts v. Creighton, 85 Iowa 154, 52 N. W. 12; Farmers & Merchants Bk. v. Daiker, 153 Iowa 484, 487, 133 N. W. 705, 706.

The difficulty is to determine what is a sufficient act to constitute or evidence such an election to exercise the option as will set in motion the statute of limitations. In the Daiker case just cited, Justice Weaver, speaking for the court said:

"* * * the principal debt does not mature until the holder of the note takes some advantage of the default, *by bringing suit, or by some other unequivocal act.*" (Italics supplied.)

But in that case action had been commenced before the regular due date of the notes and the statute of limitations was not involved.

In Watts v. Creighton, supra, 85 Iowa 154, 160, 52 N. W. 12, 14, defendants pleaded the statute in a case where the acceleration clause in a mortgage was unconditional and not optional in form. They argued that the mere happening of the default set the statute in motion. We held that the provision gave the mortgagee a right to elect to consider all the indebtedness due; that "one way of evidencing such an election would have been the bringing of a suit to foreclose the mortgage"; and that the mortgagee might waive the right granted him by accepting interest payments after they were in default.

A careful reading of that case and of the authorities it cites shows the rule to be that a breach of the condition permits the holder of the paper to treat the debt as due but the maturity date does not in fact accelerate until he does so treat it.

In 10 C. J. S., Bills and Notes, section 251d, it is said:

"The holder's intention to mature the note may be evidenced by his declarations, but declarations alone are insufficient to amount to an election, since to be effective as such, they must be followed by affirmative action toward enforcing the declared intention."

The statement is made on the authority of City Nat. Bk. of Corpus Christi v. Pope, 1924, Tex. Civ. App., 260 S. W. 903. See annotation 34 A. L. R. 899.

The Texas decision just cited is most nearly in point here of the many we have examined. In that case it was claimed the plaintiff bank had exercised its option by the writing of a letter to the debtors and that the limitation then began to run. The trial court upheld the contention. The appellate court, however, held this to be error and reversed the case.

In Moline Plow Co. v. Webb, 141 U. S. 616, 626, 12 S. Ct. 100, 35 L. Ed. 879, it is said:

"In our judgment, the parties intended to give the holder of the notes an option after default in the payment of interest, *not only to declare the principal due, but to foreclose the deed of trust,* in advance of the dates of maturity named in the notes and deed. [Italics supplied.] That option not having been exercised when or after the several defaults occurred, limitation began to run on the several notes only from their respective dates of maturity, as specified in them * * *."

In other words, the statute runs from the *exercise* of the option but not from the mere *declaration* that the principal is due.

It is true that in Federal Land Bk. v. Wilmarth, 218 Iowa 339, 344, 252 N. W. 507, 510, 94 A. L. R. 1338, we said:

"Such default merely confers upon the payee the option to declare the acceleration of the due date by the commencement of an action *or otherwise.*" (Italics supplied.)

But we did not attempt in that case, nor shall we attempt here, to enumerate the acts that might be held sufficient to effect actual acceleration. It is sufficient to say that a mere threat to commence suit, followed by a subsequent statement that "all is now due," is not sufficient either to set in motion the limitations statute or to establish an earlier maturity date for any purpose. Such declaration "must be followed by affirmative action toward enforcing the declared intention." 10 C. J. S., Bills and Notes, section 251d.

Usually there is a provision (as there is here) that the

interest rate will increase at maturity. If we were to hold sufficient a mere declaration, without any affirmative action, such a clause might become a device merely to increase the interest rate without intention of exercising the option to commence suit in advance of the stated maturity date. Such a rule should not prevail.

While the acceleration clause is for the creditor's protection, he should not be permitted to divert it to another purpose. It is a shield, not a sword. It is to enable him to take steps to enforce payment or prevent further default, not to impose an additional interest burden upon an already distressed debtor. In the instant case, we think the record shows a clear abandonment or waiver of any declared intention to take advantage of it.

■ III. What we have said under Division II would make unnecessary any discussion of the question of revivor or renewal (under section 11018, Iowa Code, 1939) were it not for Exhibit C, which was by its terms more than ten years past due when suit was commenced.

On December 26, 1941, appellant wrote a check payable to appellee for $150. It bore on its face the notation: "To apply on Interest on the M. Edith Stewart farm." Appellee, on December 27, 1941, endorsed $137.88 of it as a payment on the interest on the note of $3,000. The balance of $12.12 he testified he applied on the two other notes we have heretofore mentioned, to wit, $5.53 on the balance due on the $600 note and $6.69 on the interest due to December 27, 1941, on the one for $95.84.

We are not concerned here with the propriety of these applications. This is not materially in question except the small item of $5.53 applied on the $600, which had already been marked "paid Feb. 9, 1932." Appellee claimed this "paid" mark was a mistake. There is no evidence to the contrary. The point, however, is immaterial.

We are concerned, however, with the notation on the check, signed by appellant: "To apply on Interest on the M. Edith Stewart farm." Did it constitute a sufficient "admission in writing signed by the party to be charged, that the debt is unpaid"?

Manifestly, "interest on the * * * farm" can only mean

interest on *indebtedness* secured by a mortgage or other lien on the farm. We agree with the trial court that these words on the note, "taken in connection with her [appellant's] evidence as to her indebtedness is sufficient to and does constitute a written admission of indebtedness sufficient under Section 11018 * * * to revive the entire debt as to her only." It is not necessary to review at length our prior decisions, e.g., Leland v. Johnson, 227 Iowa 520, 288 N. W. 595; Senninger v. Rowley, 138 Iowa 617, 116 N. W. 695, 18 L. R. A., N. S., 223; and the many cases cited therein.

Under the record there can be no question as to the meaning of the notation on the check or as to the intention of appellant in making it. Her sister, who was present when the $150 check was drawn and who participated in the conversation at the time, testified that the whole amount should have been credited on the $3,000 note instead of only $137.88 of it. Appellant herself admits she owned no farm but the one here involved and that the notation on the check referred to no other interest than the Wentland mortgage interest. On the question of fact, the court was compelled to find it referred "to the mortgage indebtedness * * * sued upon in this action."

Our decisions abundantly support the proposition that the writing need not specifically describe the debt or its amount and that identification in these respects may be established by extrinsic evidence. Senninger v. Rowley, supra, 138 Iowa 617, 620, 621, 116 N. W. 695, 18 L. R. A., N. S., 223, and cases there cited; Koht v. Dean, 220 Iowa 86, 93, 261 N. W. 491; Barton v. Boland, 224 Iowa 1215, 279 N. W. 87; McClure v. Smeltzer, 222 Iowa 732, 269 N. W. 888, 891.

We have read the record and briefs with care and are convinced the decision of the trial court is correct.—Affirmed.

All Justices concur.