**In re Robert J. PARKS and Jennifer Parks, Debtors.**

**Bankruptcy No. 94–07373–BGC–13.**

United States Bankruptcy Court,
N.D. Alabama,
Northern Division.

Aug. 2, 1995.

Eric Fancher, Birmingham, Alabama, for Debtors.

Robert Moorer, Birmingham, Alabama, for Movant.

## ORDER DENYING MOTION FOR RELIEF FROM AUTOMATIC STAY

### (Filed by United Companies Financial Corporation)

BENJAMIN COHEN, Bankruptcy Judge.

This matter came before the Court on a Motion for Relief from the Automatic Stay filed by United Companies Financial Corporation on February 6, 1995. A preliminary hearing was held on February 22, 1995 at which the Court considered United's motion and its objection to confirmation of the Debtors' proposed chapter 13 plan. At that hearing the parties reached an agreement that caused the Movant's objection to confirma-

tion to become moot. This Court entered an order to that effect on March 8, 1995.

A final hearing was held on United's motion for relief from stay on March 21, 1995. The Debtors; Mr. Eric M. Fancher, attorney for the Debtors; Mr. Robert Moorer, attorney for the Movant; and Mr. Charles King, assistant chapter 13 trustee appeared. The matter was submitted on certain undisputed facts, the testimony of Mr. Robert Parks, documentary evidence admitted at trial and arguments of counsel, who advised the Court that no other testimony would be offered. For the reasons given below this Courts finds that the Motion for Relief From Automatic Stay is due to be denied.

## I. Facts

Most facts are undisputed. The Debtors purchased a home in 1990 financed by the Movant. The Debtors gave the Movant a mortgage on February 22, 1990, (Movant's Exhibit No. 2), secured by a promissory note entered the same day (Movant's Exhibit No. 1). Subsequent to the purchase the Debtors became delinquent in their payments to the Movant, the Movant invoked a "due on sale" clause in the mortgage and accelerated all unmatured payments.[1] A mortgage foreclosure notice was given. A mortgage foreclosure sale was conducted on September 13, 1994. A foreclosure deed of that sale was recorded in the Probate Court of Jefferson County, Alabama, Bessemer Division, on September 13, 1994. (Movant's Exhibit No. 3). On September 14, 1994, attorneys for the Movant *mailed* a certified, return receipt requested, 10–day demand letter to the Debtors advising the Debtors of their redemption rights under Code of Alabama 1975, § 6–5–251. (Movant's Exhibit No. 4).[2] The Debtors did not vacate the property after the demand letter was mailed and have at all times pertinent to this matter lived on the subject property.

---

1. "A 'due on sale' acceleration clause ... is not self-executing. Default does not *ipso facto* mature the whole debt." *McJenkin v. Central Bank of Tuscaloosa, N.A.,* 417 So.2d 153, 157 (Ala. 1982).

2. Mr. Parks testified that neither he nor his wife received this letter. A return receipt card form

dated September 16, 1994, was introduced as Debtor's Exhibit No. 2 and as Movant's Exhibit No. 5. The card bears a signature but Mr. Parks testified that the signature was not his. His testimony in uncontroverted, but the facts subject to the testimony are disputed.

Mr. Parks was the only witness at trial and his testimony is uncontroverted. Mr. Parks testified that he and his wife entered into the mortgage and promissory note relationship with the Movant, paid $8000.00 as a down payment on the $31,000.00 property. He testified that he did not have knowledge of the foreclosure sale and took no action until confronted with ejectment.

Mr. Parks experienced some personal problems in March 1994 and stopped making his mortgage payments. He did not make those payments from March 1994 through December 1994, at which time he and his wife filed their chapter 13 bankruptcy petition. Mr Parks testified that since the petition was filed, that he and his wife made all mortgage payments to the Movant and that those payments were accepted by the Movant. The Debtor testified that he had worked for the same employer for 31 years and that their plan payments were being deducted from his wages. Other than administrative costs there are no other debts in this case.

The Movants filed a claim in this case for $4,379.29 representing the Debtors' payment arrearage plus some late fees and interest for the March 1994 through December 1994 mortgage payments. The Debtors are making their plan payments on those arrearages. All administrative costs have been paid. After ongoing chapter 13 trustee administrative fees are paid, the balance of the Debtors' plan payments of $34.62 per week are being paid to reduce the outstanding pre-petition arrearage owed the Movant.[3]

The Parks owe the Movant $4,379.29 for 10 unpaid pre-petition mortgage payments. Mr. Parks testified that these payments were not made because he was "drinking" and "gambling" and not taking care of his personal finances. He was at the time earning enough money to make the payments, and still is, but at that time spent the money on other things.

The only evidence of the fair market value of the Parks's home is Mr. Parks's testimony of $26,000.00. There is equity in the home. The Movant's proof of claim acknowledges that even with late charges and interest at a rate of 14.5 percent, the total unpaid principal plus the amount necessary to cure all arrearages and reinstate the mortgage would be $22,767.79.

## II. Issues

■ This matter involves three issues. These are: (1) Whether the continued recognition and acceptance by the mortgagee of mortgage payments from the mortgagor-debtors, after grounds for accelerating the mortgage and instituting foreclosure existed, constituted a waiver of forfeiture; (2) if there was no waiver and there is now a recognizable foreclosure, did the Debtors, in failing to vacate the subject property after the Movant *mailed* a 10 day demand letter pursuant to Code of Alabama 1975, § 6–5–251, retain their statutory redemption rights in the property;[4] and, (3) if the Debtors did retain their right of redemption after a recognizable foreclosure, may they now exercise that right through a chapter 13 bankruptcy plan. Because this Court finds for the Debtors as to the first issue, that is, that the foreclosure should be set aside because the mortgagee waived the forfeiture by accepting post-foreclosure payments from the Debtors, the Court need not decide the second or third issues.[5]

3. The Movant returned the Trustee's first payment on the arrearage and requested, because the matter is before this Court, that no other payments be made to it at this time.

4. Alabama law recognizes a right of a property owner to redeem property after foreclosure if the property owner preserves that right of redemption by vacating the property within 10 days of demand by the mortgage buyer. Code of Alabama 1975, § 6–5–247 through § 6–5–257.

5. A case involving the third issue is pending before the Court of Appeals for the Eleventh

Circuit. Notwithstanding the fact that this Court does not need to reach this issue, it would be improper to ignore it at this time. If the necessity arises to decide the second and third issues described above, this Court will consider the facts now before it, that is, the Debtor testified that he did not receive a 10–day demand letter from the Movant and did not sign the return receipt form introduced into evidence by the movant. There was no evidence to the contrary, save the Movant's argument that the letter was mailed and that a receipt was signed for the letter. Because Code of Alabama 1975, § 6–5–251 requires the receipt of such a letter, without

## III. Conclusions of Law

This fact pattern is a familiar bankruptcy pattern. Many debtors whose financial health deteriorates become delinquent in mortgage payments. After the problem times, when those financial conditions improve, they seek assistance from the Bankruptcy Code to allow them to retain their homes. This situation was recognized by the Court of Appeals for the Eleventh Circuit in *In re Hoggle*, 12 F.3d 1008 (11th Cir.1994). Judge R. Lanier Anderson, III, writing for the court said:

> Moreover, we believe that this result is consistent with legislative intent. Chapter 13's overall policy is to facilitate adjustments of the debts of individuals with regular income through flexible repayment plans funded primarily from future income. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 118 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 141 (1978) U.S.Code Cong. & Admin.News 1978, p. 5787. The flexibility permitted in the formulation of Chapter 13 plans represents a central element in the implementation of the Congressional goal to encourage expanded use of Chapter 13. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 117–18 (1977). A main area of expansion was the Code's recognition of the desire of homeowners to save their homes through Chapter 13. Under prior law, a Chapter XIII plan could not provide protection to the debtor's home. As a result, courts evolved a solution, granting injunctions against foreclosure on mortgages during the pendency of Chapter XIII cases where foreclosure would defeat the purposes of the plan, and allowing debtors to cure defaults on their mortgages while maintaining current payments. *See In re Garrett*, 203 F.Supp. 459 (N.D.Ala.1962). Section 1322(b)(5) was intended to codify the practice under which foreclosure was enjoined during the pendency of a Chapter XIII, with the debtor given a reasonable time to cure defaults. 5 Collier on Bankruptcy 1322.09 at 1322–25 (15th Ed.1993). Accordingly, permitting cure of postconfirmation defaults best accords with Congressional intent to permit homeowners to utilize its flexible provisions for debt relief without sacrificing their homes.

### A. Foreclosure and Waiver of Default

■ The Movant recognized a post-foreclosure, mortgagee-mortgagor relationship with the Debtors.[6] The Movant's filed a claim in this case for pre-petition arrearage. Exhibit "A" to the proof of claim reads, "Total Reinstatement $4,379.29." That amount represents the amount the Movant claims is owed for pre-petition arrearage. The Exhibit "A" also reads, "Total Unpaid Principal Plus Reinstatement $22,767.79." That is the amount the Movant claims is owed if the mortgage is reinstated. This recognition of an ongoing relationship is consistent with the Movant's actions regarding post-petition mortgage payments, that is the acceptance of those payments after foreclosure and after the bankruptcy petition was filed. This conclusion is supported by the only evidence before the Court on this point. Mr. Parks testified that the Debtors had made all post-petition monthly mortgage payments and that the Movant had accepted whatever mortgage payments were tendered.[7]

■ The Movant accelerated the Parks mortgage under a due-on-sale clause in their mortgage. Under Alabama law matters involving due-on-sale clauses and foreclosures

proof of receipt, the 10-day period does not begin. *See, Hutchison v. Flowers*, 175 Ala. 651, 57 So. 719 (1912). Without more, this Court finds that as a factual matter the letter was not received and finds as a legal matter that the 10-day period did not expire and finds that the Debtors therefore retained their statutory right of redemption. If the appeals court finds that debtors may exercise redemption rights in chapter 13 plans, this Court is prepared to find that because the Debtors did not receive the 10-day demand letter and therefore did not lose their redemption right, that they may exercise that right in this case. This all, of course, presupposes that there exists now a recognizable foreclosure of the subject property. This is a legal supposition to which this Court does not subscribe.

6. See note 3 above.

7. See note 3 above. At the time of the hearing in March 1995 the Debtors had not paid their March 1995 payment.

are equitable in nature. In a case involving a fire loss before a foreclosure sale, but discovered by neither party until after the sale, the Supreme Court of Alabama recognized the power of a court of equity to set aside the foreclosure sale. *Chrysler First Financial Services Corporation v. Bolling,* 608 So.2d 734, 737 (Ala.1992). Similarly, the court recognized that trial courts should consider whether the enforcement of due-on-sale clauses would be unconscionable or inequitable when determining whether to enforce such clauses. *Powell v. Phenix Federal Savings & Loan Association,* 434 So.2d 247, 254 (Ala.1983). Actions such as those before this Court are considered sufficient for a court of equity to set aside a foreclosure sale and find that the enforcement of a due-on-sale clause would be unconscionable or inequitable. The Court of Appeals for the Fifth Circuit explains how states have addressed this issue. Judge Frank A. Kaufman, writing for the court said:

> New Mexico does not appear to have passed upon the question of whether or how a holder may abandon or waive an already-exercised option to accelerate. "If a federal court must apply state law on an issue on which there are no state cases, it must attempt to predict what the state courts would hold if faced with the issue." 32 Am.Jur.2d Fed.Pract. & Proced. § 299 (1982). Locating no aid in New Mexico case law or statutes, we turn to the decisions of other states in order to discover whether they reinforce the general principle permitting waiver which is enunciated in American Jurisprudence, Second.
>
> In examining the decisions of those state courts which have discussed the issue of waiver, we note that several courts have concluded in rather sweeping fashion that a holder's acceptance of "payment on delinquent interest and principal after notice of acceleration ... waive[s] its notice and reinstates the loan." *United States v. Colombine Coal Co.,* 27 Utah 2d 140, 493 P.2d 983, 984 (1972); *see also Mitchell v. Federal Land Bank,* 206 Ark. 253, 174 S.W.2d 671, 674 (1943); *Bisno v. Sax,* 175 Cal. App.2d 714, 346 P.2d 814, 820 (1959); *Barday v. Steinbaugh,* 130 Colo. 10, 272 P.2d 657, 658 (1954) (asserting that holder's "mere inaction" in accepting payment "after notice of election of acceleration ... [and] without notice to defendants that [holder] was not waiving her rights as to the acceleration" constituted waiver); *Pope,* 260 S.W. at 904–5.

Other courts, while not speaking quite so expansively, have permitted a determination of waiver where "the record shows a clear abandonment or waiver of any declared intention to take advantage of [acceleration]." *Wentland v. Stewart,* 236 Iowa 661, 19 N.W.2d 661, 664 (1945); see also *Andregg v. Sparrow,* 152 Kan. 744, 107 P.2d 739, 740–41 (1940) (discussing waiver for the purpose of limitations where delinquent debtor paid overdue interest and some interest not yet due); *Paul Londe & Assoc., Inc. v. Rathert,* 522 S.W.2d 609, 610–11 (Mo.Ct.App.1975) (upon surveying states' case law and noting that some allow for waiver upon "mere acceptance of a payment," the court concludes that "in order to prove an implied waiver the acts or omissions of the party alleged to have waived his rights must be so consistent with and indicative of the intention to relinquish the particular right or benefit that no other reasonable explanation is possible"); cf. Annotation, Acceptance of past-due interest as waiver of acceleration clause in note or mortgage, 97 A.L.R.2d 997 § 7 (1964) (listing cases in which waiver was determined to exist and those in which claims of a waiver were denied).

Those few cases in which courts have concluded that no waiver has been made are largely distinguishable from the instant case. For example, in *Oakland Nat'l Bank v. Anderson,* 81 Mich.App. 432, 265 N.W.2d 362, 364 (1978), the Court of Appeals of Michigan declined to consider an overdue payment made after acceleration a waiver, in part noting that the payment "did not cure all the defaults which existed at the time." In this case, Massingill and Christopher's renewal of the defaulted Note 2 after receipt of the May 23, 1985, Moncor letter did rectify the actual default of which Moncor complained. No payments in connection with Note 1 were

missed until March 1986. Additionally, the bulk of the decisions in which a waiver has been determined not to exist deal with situations in which the holder of the note already had brought suit against the maker prior to the late payment. *See, e.g.,* 97 A.L.R.2d at 1015–16. We have been unable to locate any state decision which unequivocally forbids the possibility of waiver in circumstances analogous to those present before us.

In sum, because the dominant trend among those states which have considered the issue is to allow abandonment or waiver in situations such as the one before us, we hereby conclude that New Mexico likewise would so rule if it were confronted with that question.

*Federal Deposit Insurance Corporation v. Massingill,* 24 F.3d 768, 777–778 (5th Cir. 1994).

The Supreme Court of Alabama agrees with the majority, and has for some time. In a suit to enjoin the foreclosure of a real estate mortgage containing a forfeiture clause to accelerate unmatured installments, the court found that, "The forfeiture declarable under the strict terms of the contract may be waived by continued recognition and receipt of part payments, after ground of forfeiture, and relief from the forfeiture under such conditions may be awarded in equity if it would appear to be just and right." *Barry v. Welch,* 248 Ala. 167, 168, 26 So.2d 872, 873 (1946). A few years later the court did not allow an action to foreclose a mortgage where the mortgagors elected to make payments through installments, rather than in a lump sum payment, finding that the mortgagee waived any default allowing either the acceleration of the debt or the foreclosure of the mortgage by not enforcing the lump sum option. *Thompson v. Thompson,* 257 Ala. 10, 57 So.2d 393 (1952). The same principal was recognized almost 30 years later in *Tierce v. APS Company,* 382 So.2d 485 (Ala.1979). In *Tierce,* the court recognized that:

"due on sale" clauses are not enforceable in every situation since mortgage foreclosure is generally an equitable matter; thus a court of equity might refuse to foreclose a mortgage when an acceleration of the due date for payment of the note secured by it would render the acceleration unconscionable, and the result would be inequitable and unjust.

*Id.* at 487. Chief Justice C.C. Torbert, writing an opinion dissenting from a denial of rehearing, explained the reason for the above. He wrote, "The traditional and customary purpose of the 'due on sale' clause has been to protect against impairment of the lender's security." *Id.* at 488. That protection is, of course, now afforded by the Bankruptcy Code.

Alabama law allows this portion of the matter before this Court to be concluded. Because the Movant's recognition of a continuing relationship and its acceptance of post-foreclosure payments are grounds for this Court of equity to find that the Movant waived the mortgage forfeiture, this Court finds that under the equities of this case, the Movant waived its right to forfeiture; consequently, the foreclosure of the Parks' mortgage is due to be set aside and the mortgage is due to be reinstated.

### B. Relief from the Automatic Stay

█ This Court is required to grant the Movant's request under section 362(d)(2) of the Bankruptcy Code if the Debtors do not have equity in the property *and* the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). There is equity in this property and the property is necessary for an effective reorganization. The Debtors' financial problems began with Mr. Parks's failure to pay their mortgage payments. Their current financial problems are not just related to that beginning but are the only result of and only current financial problem the Debtors have. Nothing could be more related to an effective reorganization than the ability to keep and pay for their house. Relief should not be granted pursuant to section 362(d)(2).

█ Independently, section 362(d)(1) of the Bankruptcy Code requires courts to grant relief from the automatic stay "for cause" including the lack of adequate protection. 11 U.S.C. § 362(d)(1). To determine

whether the Movant's interest is adequately protected this Court should consider the value of the Movant's interest, the risks to that value and should determine whether the Debtor's plan to protect that value outweighs the risks to that value. Applying this analysis the Court finds that the Debtors' proposal adequately protects the Movant's interest. The Movant is oversecured. The value of the home is greater than the debt. The Debtor paid $8,000.00 down on a $31,000.00 home. Mr. Parks has been employed at the same business for 31 years. He testified that he no longer participates in certain extracurricular activities. The Debtors regularly pay their chapter 13 plan payments through a payroll deduction plan. The Debtors were at the time of the hearing current on their mortgage payments. No "cause" exists for relief pursuant to section 362(d)(1).

Mr. Parks' candid explanation of his failures, failures which commonly produce financial problems, demonstrate the potential of these Debtors to be successful in this chapter 13 plan. Mr. Parks has excellent, stable employment. His plan payments are being deducted from his wages. The Parks have the ability to propose a modification that will cure the default in their mortgage that "will comport with § 1322(b)(5)'s requirements that such a cure will be effected within a reasonable time and simultaneously maintain payments on the long term loan." *In re Hoggle,* 12 F.3d at 1012. The Parks should be given that opportunity, an opportunity this Court finds would be just and right.

For the reasons stated above, the Court finds that the Motion for Relief from Automatic Stay is due to be denied.

It is therefore **Ordered,** that:

1. The Motion for Relief from the Automatic Stay is **DENIED;**
2. The mortgage foreclosure is set aside;
3. The mortgage is reinstated; and,
4. The Debtors are allowed to pay their arrearage amounts through their Chapter 13 case.