No. 3876

Second Circuit

DEALER'S FINANCE CO., INC., v. FEATHERSTONE, SR.

(December 23, 1930. Opinion and Decree.)

Dhu Thompson, of Monroe, attorney for plaintiff, appellee.

J. W. Elder, of Ruston, attorney for defendant, appellant.

ODOM, J. This suit is to recover the balance alleged to be due for repairs to, and accessories for, an automobile owned by defendant. The account was originally owned by the Webster Motor Company, Incorporated, of Minden, La., and was by that company transferred to plaintiff. Defendant's contention is that the account is for repairs to a car not owned by him but owned by the Webster Motor Company, Incorporated.

The Webster Motor Company was an automobile dealer, and sold Ford cars at Minden. Defendant was in the market for a new model "A" Tudor sedan Ford car and while in Shreveport in December, 1927, called the dealer in Minden over the telephone and told Mr. Menefee, the manager, that he wanted a new car, and that he had an old Ford which he wanted to use in the trade. Menefee told defendant that he would be in Shreveport in two hours to see him, but, instead of going himself, he sent his son. The two met at a hotel, where defendant says he closed the trade for a new car at the price of $648.62 to be paid as follows: Credit for the old car at $348.62, and the balance of $300 in cash, which he paid then and there by check which was accepted and cashed by the dealer.

It is defendant's contention that, by this transaction with young Menefee, representing the dealer, the old Ford then and there became the property of the dealer, and that the full price of the new Ford was paid.

The dealer, on the other hand, contends that it did not agree to accept and give credit for the old Ford at $348.62 or at any other price, but that the understanding was that it would take the old car, put it in running condition, sell it at the best price obtainable, and credit the proceedings on the price of the new car. It finally sold the old car for $200, and gave defendant credit for the amount. Defendant paid an additional $100 on May 6, 1928, and $50 in March, 1929. These amounts, together with the $300 originally paid and the credit of $200 for the old car, overpaid the price of the new car by $1.38.

The principal controversy between the parties is whether the dealer agreed to allow defendant a credit of $348.62 for the old car, in which event the dealer became the owner of it, or whether it agreed to take it and sell it for the account of defendant, giving him credit for what it would bring. If defendant's version of the transaction is correct, then he does not owe the account sued on, which is principally for repairs on the old car.

The trial judge, after hearing the witnesses, held that the transaction was as contended by the dealer, that is, that the old car was to be taken, put in running condition, and sold for the best price obtainable, the proceeds to be credited on the price of the new car, which was done. We think he did not err in his conclusions.

If, as defendant contends, the dealer was to take the old car at $348.62, which, added to the $300 paid in cash, made up the full

price of the new Ford, the defendant owed nothing more. But he admits that four months later he paid the dealer an additional sum of $100, and still later $50 more, or $150 more than the price of the new car. The dealer gave defendant a receipt for the $100 paid on May 6, 1928, which reads:

"Received of L. H. Featherstone one hundred dollars ($100.00) to apply on new car."

Nearly one year later, on March 9, 1929, he paid by check an additional $50, and wrote in the face of the check, "Balance on last Ford, Model 1928." He therefore paid $150 more for the new Ford than he says he agreed to pay, which seems rather remarkable.

In explanation as to why he paid the $100 on May 6, defendant testified that the dealer could not deliver the new car promptly, and that it let him use the old car which he turned in until the new one came, and that he did not want to be "short" about anything, and thought he should pay something for the use of it. But by saying that, he completely shifted his position, for he alleged in his answer that the dealer was slow about delivering the new car, that he repeatedly called upon it to make delivery, and "they were not yet ready to deliver the said new car *but agreed to furnish defendant with a used car until they could secure from the factory or elsewhere a car of the kind and character sold to defendant and to keep the said used car in repair for defendant without charge until they could make delivery of the new car.*" (Italics ours.) If that be true, he owed nothing for the use of the used car.

We note also that defendant testified further that the $100 paid in May was in the nature of a "tip" to the dealer to get it to speed up delivery. Further in defendant's answer he alleged that the "company agreed that on the payment of $100.00 additional to their former agreement they would then deliver the car of the kind and character sold." Mr. Menefee, the manager, and Mr. Holland, the bookkeeper, denied this, and testified that, when defendant became restless about the new car, and they could not make delivery because new cars could not be obtained from the factory, they offered to return the $300 which he had advanced and the old car, and cancel the order, and that defendant refused. Defendant admits this.

On the record as made up and presented to us, we must hold that the dealer's version of the transaction is correct.

Now, as to the account sued on: It is made up of items for repairs to and parts for the old car which defendant turned in and which he used for something like three months previous to the delivery of a new car in June. When the dealer took possession of it, it would not run, and had to be repaired in Shreveport before it could be carried to Minden. The dealer paid this bill. It made the other repairs, and supplied the parts later, some of them while defendant was using it. Some of the items charged are for adjustments and repairs on the new car after it was delivered. Defendant says he should not be charged for this service, for the reason that the dealers were obligated to service the car under its contract of sale. The testimony shows that under the contract the dealer was to service the new car free of charge for ninety days, or until it ran fifteen hundred miles, and that the charges made were for service on the car after it had run twenty-one hundred miles and more. As defendant received all this

service on cars which belonged to him, he must pay for it.

The case was submitted on briefs, and we note that counsel for defendant says the account was not proved. The dealer did not produce the witnesses who made the repairs, but the manager stated that, while he did not make them, he saw that the cars were in the shop being repaired from time to time, and the bookkeeper said the charges were made on the books in the usual course from service records furnished him. Defendant does not deny that the work was done and the parts furnished. He testified that he did not owe the account, but his theory seems to be that the old car belonged to the dealer, and not to him, and that, in so far as the new car is concerned, the repairs should have been made without charge to him. We do not think so.

The judgment appealed from is correct, and is accordingly affirmed, with all costs.