HOOD, Judge.
G & S Implement Company, Inc., seeks to recover from defendant, Oscar Sylvester, Jr., amounts alleged to be due for merchandise sold to and services performed for defendant. Sylvester denies any indebtedness to plaintiff, and he has reconvened to recover damages from plaintiff for the latter’s alleged breach of a contract entered into by the parties for the repair of a tractor owned by defendant. The trial judge rendered judgment for plaintiff, awarding it $1,687.86 and rejecting Sylvester’s reconventional demand. Defendant appealed.
The issues presented are (1) whether plaintiff established its claim by competent evidence, and (2) whether plaintiff failed to discharge its obligations under the above contract, with the result that defendant is entitled to recover the amount paid to plaintiff for making those repairs and damages for breach of contract.
Defendant Sylvester owned several farm tractors during the latter part of 1972, one of which was a 1030 Case tractor which needed motor repairs. He talked to Luke Soileau, manager of G & S Implement Company, about the expense which would be incurred in making those repairs, and in the course of that conversation the parties agreed that plaintiff would make some repairs to the tractor for the sum of $600.00.
Plaintiff thereupon, on December 8, 1972, proceeded to change three cylinder heads on the engine of the tractor, all of which were cracked and had to be replaced, and to change the piston rings. G & S submitted a bill to defendant in the amount of $758.16 for that work, explaining that $600.00 of that charge was for changing the cylinder heads and $158.16 was for changing the piston rings. Defendant paid plaintiff that full amount by check dated January 22, 1973.
After the above repairs had been completed, Sylvester took the tractor to his farm in Evangeline Parish and used it for about two days. It operated properly the first day, but it began to overheat and lose power on the second day, so the tractor was returned to plaintiff’s shop on or shortly before February 9, 1973, where it was determined that water was getting into the crankcase and was mixing with the oil in the engine. Plaintiff removed the oil pan and the cylinder heads on February 9, 1973, so he could determine what was wrong with the engine, and ordered some “piston sleeves” for it. These sleeves arrived a few weeks later, and plaintiff installed them in the tractor engine on March 8, 1973. The installation of new sleeves and the use of a “block' sealer” failed to make the tractor operate properly, so plaintiff informed Sylvester that the block of the engine was cracked, and that the tractor could not be fixed unless and until a new block was obtained for it. Sylvester removed the tractor from plaintiff’s shop, took it to his home and had his own mechanic change the block at a cost of approximately $2,300.00. The tractor has operated properly since that time.
Plaintiff then submitted a bill to Sylvester, consisting of 28 separate charges, and *394 amounting to the aggregate sum of $1,692.-29. Five of those charges were for repair work performed by plaintiff, and the remaining 23 charges were for “over-the-counter” purchases of parts or merchandise allegedly made by defendant or for his account. The statement did not include the bill for $758.16 which was paid by defendant on January 22, 1973, and it did not include one other bill which was paid by defendant at about the same time. It did include, however, all other charges made to Sylvester’s account from September 7, 1972, until April 10, 1973.
Each of the five charges for repair work allegedly performed by plaintiff for defendant was evidenced by a repair order, and included on that order was an invoice for the parts used. Three of those repair orders were issued from September 20, 1972, to January 3, 1973, and it is apparent that the repair work which was done pursuant to those orders did not relate in any way to the tractor which is involved in this suit. The remaining two repair orders do relate to that tractor, and they indicate that • plaintiff performed the following work on it:
2/9/73 — Remove & Replace Pan & oil pump — cylinder Heads— 117.78
3/8/73 — Change Piston Sleeves— 199.57 Total 317.35
The above charges, amounting to a total of $317.35, are the only items claimed by plaintiff in this suit which relate to repair work on the above tractor. Mr. Soileau, manager of G & S, testified as to the correctness of those charges, and defendant concedes that those invoices have been properly identified, although he argues that plaintiff nevertheless is not entitled to recover from defendant for other reasons.
Plaintiff’s primary argument is that 26 of the 28 invoices which plaintiff introduced in evidence, that is all of the invoices except the two repair orders above described, were not properly identified, and that they thus do not constitute proof of the indebtedness alleged by plaintiff.
At the trial plaintiff introduced invoices and repair orders which itemized and explained each of the 28 charges which were included on the statement it submitted to defendant. The charges amount to a total of $1,692.29, but plaintiff concedes that it demanded judgment-for only $1,687.86 and that the trial judge correctly rendered judgment for the lessor amount.
The invoices and repair orders introduced in evidence were identified by Mrs. Gwen Guillory, bookkeeper for plaintiff, who testified that those documents were filled out by parts salesmen and other employees of that business establishment, in the regular course of business, that all of such invoices and repair orders were given to her, as bookkeeper, and that she entered the charges reflected by those documents on the books of the company. She had no personal knowledge of the sales which were made, but she kept all of the invoices and entered them on the books as a part of the regular bookkeeping system of plaintiff company.
Defendant objected to the admission of the invoices and repair orders in evidence on the ground that they constituted hearsay evidence, since Mrs. Guillory did not have personal knowledge of the sales or purchases made or the repair work performed as shown on those documents. The objection was overruled by the trial court, and the objection and ruling were made general as to all evidence relating to those documents.
Although defendant contends that the invoices and repair orders were improperly admitted in evidence, he refers us to no authorities which support his position.
We are aware of LSA-C.C.' art. 2248, and have considered that article, despite the fact that defendant does not rely on it. The jurisprudence of this state is settled, however, that business records consisting particularly of invoices or charge slips, may be accepted as competent evidence as to the amount owed on an ac *395 count, when the bookkeeper or custodian of those records testifies as to the correctness of them. Crosby v. Little River Sand & Gravel Development, 212 La. 1, 31 So.2d 226 (1947); City Stores Company v. Jordan, 211 So.2d 709 (La.App. 4 Cir. 1968); Talley v. Duplantis, 213 So.2d 82 (La.App. 1 Cir. 1968); Dealer’s Finance Co., Inc. v. Featherstone, 15 La.App. 180, 131 So. 486 (La.App. 2 Cir. 1930).
In the instant suit we find that at least eight of the invoices filed by plaintiff were signed by persons who apparently acknowledged receipt of the items sold. Two of them were signed by “Oscar Jr.,” whom we assume was defendant in the suit although it is immaterial whether it was Sylvester or someone else. Six were signed by other persons, and the record is not clear as to what authority they had to bind defendant. No signatures appear on the other invoices. The two repair orders relating to the tractor involved in this suit were not signed by anyone, but they were identified by Soi-leau.
Defendant neither admits nor denies that the items described in the invoices were actually received by him or that the work described in the repair orders was performed, and he does not allege or accuse plaintiff of fraud or bad faith. Defendant testified that he previously notified plaintiff that when purchases were made and charged to his account, the person receiving the merchandise should be required to sign the invoice. The record shows, however, that prior to the date this suit was filed defendant made several payments to plaintiff to be applied to his charge account there, although many of the invoices which evidenced the charges had not been signed by anyone.
We conclude that the invoices and repair orders filed in evidence in this case were properly admitted and considered by the trial court. We believe that they make out at least a prima facie case that Sylvester owed the amount claimed by plaintiff, and that defendant has failed to meet or offset that proof.
Defendant contends, alternatively, that plaintiff, through its manager, agreed to restore the tractor “to first class running shape” for the sum of $600.00, and that plaintiff has failed to perform that part of the agreement. On the basis of that alleged breach of contract, he has reconvened for judgment against plaintiff for (1) $758.16, that being the amount he previously paid to plaintiff for repairs to the tractor, (2) $750.00 for loss of use of the tractor for 30 days, and (3) $1,000.00 for mental anguish. He also contends that he should be relieved of paying plaintiff $317.35, this being the amount charged for repair work performed on February 9 and March 8, 1973.
There is an irreconcilable conflict in the testimony of Sylvester and Soileau as to the terms of the agreement which they entered into on or immediately prior to December 8, 1972, when the tractor was first taken to plaintiff for repair.
Sylvester testified, in substance, that Soi-leau agreed to restore the tractor to first class condition, regardless of the nature of the repairs which would be required, for the sum of $600.00. He maintains that he did not know what was wrong with the tractor at that time, and that he did not specify any particular repairs which were to be made. He stated that when the tractor was returned to plaintiff in February, 1973, it was his understanding that plaintiff would perform any other repairs needed to restore the tractor to good running condition, without any additional expense to defendant.
Soileau denies that he agreed to restore the tractor to running condition. He testified that when the tractor was first brought to plaintiff’s place of business, Sylvester instructed him to change the three cracked cylinder heads and that Soi-leau agreed to perform that work for $600.00. The only guarantee he made, ac *396 cording to his testimony, was that the cylinder heads would be free from defects and that they would be properly installed. He knew that if they were found to be defective, they would be replaced free of charge by the factory. Soileau also testified that after the engine had been partially dismantled and the condition of the piston rings pointed out to defendant, Sylvester then instructed him to change the piston rings in addition to changing the cylinder heads. He stated that that work was performed on the tractor, and that Sylvester paid plaintiff’s charges of $758.16 for that work, without complaint.
Soileau also testified that when the tractor was returned in early February, 1973, he informed Sylvester that either the block or the sleeves were cracked, and that the block should be replaced, and that Sylvester thereupon specifically told him to replace only the sleeves. He then ordered the sleeves from the factory and he installed them in the tractor when they arrived. He categorically denies that he ever agreed to restore the tractor to running condition or to do anything other than that which he was specifically instructed to do by Sylvester.
The trial judge rejected Sylvester’s testimony and accepted that of Soileau. He stated:
“I cannot conclude that plaintiff guaranteed anything other than its own repair work, that is, that the heads etc. would be without defect and would be properly installed. Even if the testimony of Luke Soileau and defendant presented a standoff on credibility, there are other considerations which show that no general warranty was given with regard to the tractor’s performance.

“The fact that defendant paid the bill of $758.16 belies his contention that the price was set at $600. Payments by him of many other bills discredit his claim that no debt could be incurred except by signature of one of his representatives.

“In view of the above holdings, the re-conventional demand fails and will be dismissed.”
We find no error or abuse of discretion on the part of the trial court in his decision to accept the testimony of Soileau and to reject that of Sylvester. We conclude, therefore, that plaintiff did not agree to restore the tractor to running condition, but that instead it merely did the repair work which was authorized by defendant. The trial court correctly rejected defendant’s reconventional demands.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.